COLLEGE MOBILE HOME PARK & SALES, INC., Appellant,
v. HOFFMANN, Respondent.

*No. 685 (1974). Submitted on briefs April 12, 1976.—Decided
May 4, 1976.*
(Also reported in 241 N. W. 2d 174.)

For the appellant the cause was submitted on the brief of *Zurlo & Weber* of Milwaukee.

For the respondent the cause was submitted on the brief of *Louis J. Mestre* and *Larry Farris* of Milwaukee Legal Services, Inc.

CONNOR T. HANSEN, J. The issue in the case concerns the validity of an exculpatory clause in a landlord-tenant mobile home park lease relationship. The question to be resolved is whether the trial court committed error in dismissing the motion of College for summary judgment.

College is engaged in the business of mobile home sales and rentals. College commenced an eviction action in May, 1973, alleging that on or about December 1, 1969, it entered into an oral month-to-month lease with Hoffmann, and that Hoffmann had defaulted in rent and utility payments since March 1, 1973. These facts do not appear to be in dispute. Judgment was demanded for the eviction of Hoffmann and in a second cause of action, College sought damages in the amount of the unpaid rent and utilities.

Hoffmann counterclaimed, alleging that during his tenancy College had failed to maintain adequate heating and claiming personal injury to himself and his family and other damage because of that failure. The registration card Hoffmann executed reflects the mobile home he rented was to be occupied by five persons. Hoffmann vacated the mobile home after the eviction action was commenced. College thereafter amended its complaint alleging only a cause of action for the unpaid rent. Hoffmann again answered and counterclaimed.

College moved for summary judgment on the counter-claim based upon an agreement which Hoffmann had signed at the time he rented the mobile home. The agreement, in pertinent part, provides:

## "COLLEGE MOBILE HOME PARK— REGISTRATION CARD

### NOTICE TO TENANTS

"The management of this trailer park reserves the right at all times to terminate the tenancy of a tenant for reasons the former shall deem objectionable and will not be responsible for damage to trailers or any other personal property; nor accidents nor injury to tenants; fire, theft or loss of valuables in or around trailers. No dogs allowed. No rent refunds. Rent must be paid by 5th of month, after which there is a charge of 25¢ per day. Management requires 30 day notice for expiration of tenancy. Tenant is required to obey rules and regulations of this park at all times.

"I have read the rules of this park and agree to abide by said rules."

In disposing of the motion for summary judgment, the trial court correctly perceived the question to be ". . . whether the exculpatory language should be enforced so as to absolve the plaintiff [College] from all liability to the defendant [Hoffmann] for any injury sustained while a tenant."

Exculpatory clauses in leases serve the purpose of prospectively absolving the landlord of liability in various circumstances. They are commonly worded very broadly so as to cover damage to property and injury to persons and the scope of their applicability depends upon the language of the particular clause and the type of tenancy. 2 Powell, *Property*, p. 366, sec. 234 [4]. As a general rule such clauses are valid. The justification for upholding the validity of such clauses stems from the concept of freedom of contract, grounded in state

and federal constitutional provisions. *Queen Ins. Co. of America v. Kaiser* (1965), 27 Wis. 2d 571, 135 N. W. 2d 247.[1]

The consequences resulting from the use of such clauses have led to a judicial application of rules of strict construction of their terms in favor of the lessee. *Powell, supra,* p. 368. However, strict construction does not necessarily accomplish the purpose of mitigating the effects of the clause. Accordingly, several states, including Massachusetts and New York, have enacted statutes prohibiting such exculpatory clauses.[2] In addition, exceptions to the general rule of validity, especially in relation to certain types of residential leases, have been articulated by the courts of various jurisdictions in recent years.

Thus, the court in *McCutcheon v. United Homes Corporation* (1971), 79 Wash. 2d 443, 486 Pac. 2d 1093, found that the type of exculpatory clause in question was void as contravening public policy. The clause exempted the landlord from liability if a tenant sustained personal injury in the common areas of the multiunit dwelling as a result of the landlord's negligence. The court was of the opinion that the exculpation violated the basic common-law rules of tort liability extant in the landlord-tenant relationship and, therefore, could not be enforced. The Washington court determined that the subject matter was not a purely private consideration, but rather one of public concern, because of its generalized use, affecting large numbers of potential tenants.

---

[1] Annot. 49 A. L. R. 3d 321; *Strauch v. Charles Apartments Co.* (1971), 1 Ill. App. 3d 57, 273 N. E. 2d 19, 23. *See also: Eastern Avenue Corp. v. Hughes* (1962), 228 Md. 477, 180 Atl. 2d 486; *Middleton v. Lomaskin* (Fla. App. 1972), 266 So. 2d 678.

[2] N. Y. Gen. Oblg. Law, sec. 5–321 (McKinney 1964); Mass. Laws Ann. 186–15 (Supp. 1975); *"Landlord's Liability for Defective Premises,"* 1975 Wis. L. Rev. 82 (1975).

Similarly, in *Tenants Council, Etc. v. DeFranceaux* (D. C. D. C. 1969), 305 Fed. Supp. 560, a clause purporting to exempt the landlord of liability from injury resulting from use of the swimming pool facilities was determined to be invalid as against public policy. In addition, the court stated that it was invalid because it would insulate the landlord from the consequences of violation of duties imposed both by the common law and the local building code.

A significant exception has also developed in the situation where the parties are of unequal bargaining power. This inequality may be evidenced by a variety of circumstances. In *Kuzmiak v. Brookchester, Inc.* (1955), 33 N. J. Super. 575, 111 Atl. 2d 425, the housing shortage then existing was deemed to place the landlord in a superior position. The court in *Cardona v. Eden Realty Co.* (1972), 118 N. J. Super. 381, 288 Atl. 2d 34, was of opinion that the lease provisions in their entirety, including certain lessee waivers, in themselves revealed that the landlord was in an eminently superior bargaining position. The court stated that:

"While it is conceivable that even in some noncommercial transactions a landlord and tenant might properly negotiate a lease to rent property 'as is' and in consideration of a reduced rental the tenant assume all liability for repairs and insurance coverage, it is clear that in this multiple-tenant tenement house lease, the provisions thereof were oppressively for the benefit of the landlord and against public policy." *Cardona v. Eden Realty Company, supra,* page 36.

In *Crowell v. Housing Authority of City of Dallas* (Tex. 1973), 495 S. W. 2d 887, it was recognized that the very purpose for the existence of the Housing Authority, which was to provide safe and sanitary living accommodations to persons of low income, gave rise to a classic example of unequal bargaining power. For

this reason, the clause was determined to be void in light of public policy.

The above-cited cases are illustrative of the myriad approaches which have been taken by various courts when presented with situations where landlords attempt to exempt themselves from prospective liability for their own negligence. Exculpatory clauses have been upheld basically on the grounds of freedom of contract and the view that lease terms are a purely private matter. However, the application of these principles in all contexts is not warranted. The generalized use of exculpatory clauses is not an entirely private matter, particularly in certain types of residential lease situations. The unconsidered application of the principle of freedom of contract, even when accompanied by the rules of strict construction, is not always justified when there are extenuating circumstances which may affect the degree to which that freedom actually exists. Therefore, we are of the opinion that the better view is that which takes into account the actual effect of the particular clause in question and that the facts and circumstances attendant upon the creation of the landlord-tenant relationship.

In *Johnson v. Prange-Geussenhainer* (1942), 240 Wis. 363, 374, 375, 2 N. W. 2d 723, it was held that such clauses are not automatically void as against public policy and that the rule of strict construction could not be invoked to defeat the clear intent of the parties. Therefore, the particular facts of the case, in which the landlord was charged with failure to make a careful inspection of the premises, were relied upon for the result:

". . . Clearly, mere failure to make a careful inspection of the premises cannot be held such negligence on the part of the lessor as to suspend the operation of the

indemnity provision." *Johnson v. Prange-Geussenhainer Co., supra,* page 376.

This distinction between active and passive negligence was reiterated in the more recent case of *Queen Ins. Co. of America v. Kaiser, supra.* There it was determined that the inadvertent act of the landlord's employee was merely passive negligence and, therefore, could not suspend the operation of the otherwise valid exculpatory clause. It was pointed out that the particular clause in question was broad, evidencing an intent on the part of both parties to a commercial lease to limit the liability of the lessor. This intent was further evidenced by the fact that the tenant obtained insurance to protect against the type of loss exempted. In addition, it was made clear that the validity of the clause was grounded in the concept of free bargaining, p. 575.

Thus, Wisconsin precedent in this area does not compel the result that exculpatory clauses will always be deemed valid. The question is what types of circumstances will render any particular clause invalid.

Several distinctions have been articulated. The decisions of this court distinguish between active and passive negligence as a test for validity. Other courts have made a distinction between commercial and residential leases. *Swisscraft Novelty Co., Inc. v. Alad Realty Corp.* (1971), 113 N. J. Super. 416, 274 Atl. 2d 59, 62; *Gabl v. Alaska Loan & Investment Co.* (1972), 6 Wash. App. 880, 496 Pac. 2d 548, 551; *Midland Carpet Corp. v. Franklin Associated Prop.* (1966), 90 N. J. Super. 42, 216 Atl. 2d 231, 234. We deem such categorical distinctions to be somewhat artificial and arbitrary. This is especially so in view of the fact that the commercial-residential lease rationale often rests, not on the distinction itself, but upon the assumption that parties to certain leases, especially commercial leases, are more likely to enjoy equal power in the bargaining process than do parties

to residential-lease agreements. *Midland Carpet Corp. v. Franklin Associated Prop., supra; Gabl v. Alaska Loan & Investment Co., supra.* The result in any residential lease case should be grounded in factual or legal determinations which would include the circumstances under which the lease was negotiated, including the type of lease involved—whether a standard form or an individualized contract—the type of housing which the lease covers, the relative positions of the parties at the time the lease was entered into, and the scope of the exculpatory language. Under certain circumstances, this latter consideration could include the element of whether the landlord has attempted to absolve himself of liability for failure to comply with legally imposed duties.

This court recently restated the rules governing dispositions of motions for summary judgment in *Lawver v. Boling* (1976), 71 Wis. 2d 408, 413, 414, 238 N. W. 2d 514:

". . . Summary judgment is proper only where there is no material issue of fact and the question presented is solely one of law. If there is a dispute as to the material facts, if different inferences might be drawn from the facts, or if the application of the controlling law to the facts is uncertain, summary judgment should not be granted."

In the instant case, College operated a mobile home park. Hoffmann and his family of five had been in Milwaukee a week, without furniture and living with a relative. His answer to interrogatories propounded in this action by College reflect he was employed by Teledyne Wisconsin Motors. The exculpatory agreement was not set forth in a formalized lease executed by both parties. Rather, it was set forth in relatively small print on a registration card signed only by Hoffmann at the time he rented the furnished mobile home.

The trial court concluded that the exculpatory language in the registration card signed by Hoffmann was so

broad as to contravene public policy in that it would absolve College from liability for any injury to the tenant for any reason. Therefore, the motion for summary judgment was denied because material facts as to College's alleged negligence were in dispute.

On the facts of this case, we conclude, as a matter of law, that the determination of the trial court was not in error.

*By the Court.*—Order affirmed.