Leroy J. ARNOLD and Karen Arnold, his wife,
Plaintiffs-Appellants,

v.

SHAWANO COUNTY AGRICULTURAL SOCIETY, Shawano
County, Shawano County Fair Board and American
Home Assurance Company, Defendants-Respondents-Petitioners.†

Supreme Court

*No. 81–1039. Argued January 6, 1983.—Decided March 1, 1983.*

(Also reported in 330 N.W.2d 773.)

† Motion for reconsideration denied, without costs, on April 12, 1983.

For the defendants-petitioners there were briefs by *Thomas J. Arenz, Michael J. Lund* and *Frisch, Dudek & Slattery, Ltd.*, Milwaukee, and oral argument by *Mr. Arenz*.

For the plaintiffs-appellants there was a brief by *Ralph M. Lauer* and *Lauer, Meyer & Sage*, Clintonville, and oral argument by *Ralph M. Lauer*.

STEINMETZ, J. The issue of this case is whether the exculpatory contract signed by Leroy J. Arnold in order to race in a stock car race sponsored and operated by the Shawano County Fair Board bars his claim for negligence against that society, and, also whether the contract bars the claim of his wife, Karen, for loss of consortium. The court of appeals held the claims were not barred. We affirm.

This is a negligence action brought by Leroy J. Arnold for damages as a result of severe personal injuries that rendered him a quadriplegic. His wife, Karen Arnold, sued for spousal loss of consortium. The injuries were sustained by Leroy J. Arnold while participating in a stock car race at the Shawano county fair grounds. The car operated by Leroy J. Arnold crashed through a guardrail, left the track, and then struck a utility pole and a lumber pile located outside of the guardrail causing a fire in the automobile. As a part of the rescue operations, fire extinguishing chemicals were sprayed on the burning vehicle without removing Leroy Arnold

from the vehicle. The chemicals allegedly caused the plaintiff to sustain severe brain damage.

The action was brought against the Shawano County Agricultural Society, Shawano County and the Shawano County Fair Board as the track owners and race promoters. The act was also brought against American Home Assurance Company, the liability insurer. The summons and complaint were filed by the plaintiffs on August 7, 1979. The complaint alleged that the plaintiff, Leroy J. Arnold, sustained severe personal injuries, and his wife, Karen Arnold, sustained loss of consortium, all as a result of the negligence of the defendants.

The allegations of negligence in the complaint are:

"The race track was maintained in a negligent manner;

"The guard rail of said race track was maintained in a negligent manner;

"Personal property was negligently permitted to be located adjacent to said race track thereby endangering race participants who were forced off or left the race track during the course of a race;

"The race track grounds were not properly equipped with emergency equipment for rescue operations in the event of an accident; and

"The race track personnel were inadequately trained in the use of emergency equipment and that by reason thereof poisonous gases were directed at the plaintiff, LeRoy J. Arnold, during the rescue attempt."

The defendants moved for summary judgment based upon an exculpatory contract[1] signed by Leroy J. Arnold

[1] "WAIVER AND RELEASE FROM LIABILITY AND INDEMNITY AGREEMENT

| TRACK NAME | DATE |
|---|---|

In witness whereof each of the undersigned *SHAWANO COUNTY* and *54166* SHAWANO, WISCONSIN

| SIGNATURE OF PIT GATE SIGNING OFFICIAL | ADDRESS |
|---|---|

IN CONSIDERATION of being permitted to enter for any purpose the RESTRICTED AREA (herein defined as the area to which admission for the general public is prohibited, including but not limited to the pit area, racing surface and infield, including walkways, concessions and other appurtenances therein) each of the Undersigned, for himself and personal representatives, assigns, heirs and next of kin, agrees, and on the direct representation that he has, or will, prior to the inception of the racing program, inspect such RESTRICTED AREA and he does further warrant that his participation in the scheduled racing program and his entrance upon the RESTRICTED AREA, constitute an acknowledgement that he has inspected the RESTRICTED AREA and that it is safe and reasonably suited for the purposes of the racing program:

1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the Promoter, Participants, Racing Association, Track Operator, Track Owner, Landowner, and each of them, their officers, and employees, all for purposes herein referred to as RELEASEES, from all liability to the Undersigned, his personal representatives, assigns, heirs and next of kin for all loss or damage, and any claim or demands therefor, on account of injury to the person or property or resulting in death of the Undersigned, whether caused by the negligence of Releasees or otherwise while the Undersigned is upon the Restricted Area; and

2. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the Releasees and each of them from any loss, liability, damage, or cost they may incur due to the presence of the Undersigned in or about the Restricted Area and whether caused by the negligence of the Releasees or otherwise.

Each of the Undersigned expressly agrees that the foregoing Release, Waiver and Indemnity Agreement is intended to be as broad and inclusive as is permitted by the law of the state in which the race is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

Each of the Undersigned warrants the following statements are true and correct and understands that the Releasees have relied on them in entering into the foregoing Release, Waiver and Indemnity Agreement and in giving the Undersigned permission to enter the Restricted Area:

1. No oral representations, statements or inducements apart from the foregoing written agreement have been made.

2. He assumes full responsibility and risk of bodily injury, death or property damage due to the negligence of Releasees or otherwise upon entering the Restricted Area.

3. HE HAS READ AND VOLUNTARILY SIGNS THIS RELEASE AND WAIVER OF ALL LIABILITY AND INDEMNITY AGREEMENT.

| SIGNATURE | MOTORCYCLE OR CAR NO. | SIGNATURE | MOTORCYCLE OR CAR NO. |
|---|---|---|---|

Exhibit "A"
IFC-CIC-KK1 (1/74)

prior to the start of the race. There were two affidavits directed to the motion for summary judgment. The first was that of Charles O'Brien, the secretary of the Shawano Agricultural Society. In relevant part he swore:

"As a condition precedent to participating in the race, all race car drivers were required to enter into an Agreement by which they released all claims against Shawano County Agricultural Society, Shawano County, and the Shawano County Fair Board, by which they covenanted not to sue Shawano County Agricultural Society, Shawano County, or the Shawano County Fair Board and by which they agreed to indemnify Shawano County, Shawano County Agricultural Society and Shawano County Fair Board."

The affidavit of Charles O'Brien then referred to the exculpatory contract and its various provisions.

The other affidavit received in opposition to the motion was that of Karen Arnold. In relevant parts to alleged negligence of the defendants and cause of her husband's injuries she swore:

"That on August 7, 1976, the plaintiff, Leroy J. Arnold, was seriously injured while racing at a race track located at the Shawano County Fairgrounds.
"That the race track is enclosed within a guard rail.
"That as a result of the condition of the track the automobile being operated by Leroy J. Arnold left the track and crashed through the guard rail and struck a utility pole and lumber pile and thereupon burst into flames.
"That a rescue squad was maintained at the race track for the purpose of conducting rescue squad operations in connection with accidents which might occur on the Fairgrounds.
"That such rescue squad did in fact conduct rescue operations at the scene of the burning vehicle of Leroy J. Arnold.
"That Leroy J. Arnold was in the burning automobile at the time such operations were being conducted.
"That as part of such rescue operations fire extinguishing chemicals were placed into the burning vehicle without removing Leroy J. Arnold from such vehicle

and without regard to the toxic effect of such chemicals on the plaintiff, Leroy J. Arnold.

"That as a result of the rescue operation the reaction of the chemicals placed in the burning vehicle and the chemical reaction created by placing the chemical fire extinguishing materials in the burning automobile caused the plaintiff, Leroy J. Arnold, to sustain brain damage.

"That as a result of the rescue operation which occurred off the race track the plaintiff, Leroy J. Arnold, is a quadriplegic; that he is unable to speak, and that he is entirely dependent upon others for the ordinary requirements of living all of which injuries are permanent."

On March 20, 1981, the circuit court for Menominee and Shawano counties, the Honorable Thomas G. Grover, rendered a decision granting the motion for summary judgment and ordering judgment dismissing the complaint with prejudice and with costs.

The trial court's decision found no material fact to be in dispute. The decision stated:

"The plaintiff did execute the release and indemnity agreement which in effect prevented the bringing of this instant action. The language of the agreement and the intentions of the parties are unequivocal. The fact that the plaintiff could not anticipate what actually happened to him is of no consequence. His release and indemnification were clearly intended to cover unforeseeable losses even though such losses may be caused by the negligence of the defendants. The plaintiff was an experienced race car driver and would be aware of the risks that were involved in such activity. Even though the plaintiff did not expect what happened to him on August 7, 1976, he would know that there are many serious risks involved in race car driving."

The plaintiffs appealed. The court of appeals reversed the circuit court and remanded the case for further proceedings. *Arnold v. Shawano County Agr. Society,* 106 Wis. 2d 464, 317 N.W.2d 161 (Ct. App. 1982). The court of appeals held the case should not be decided by a motion for summary judgment, finding a question of

fact as to the intent of the parties in executing the release. The court of appeals also held that Karen's claim for consortium was a separate cause of action not subject to the defenses alleged against Leroy.

Since this is an appeal from a summary judgment, the standard of review is whether the trial court abused its discretion in granting the motion for summary judgment. We will reverse only if the trial court incorrectly decided a legal issue or material facts are in dispute. *Prince v. Bryant,* 87 Wis. 2d 662, 666, 275 N.W.2d 676 (1979). In this case, the issue is whether there are material facts in dispute. If the record shows that there are facts in dispute or the existence of competing reasonable inferences, the party resisting the motion is entitled to a trial. *Lecus v. American Mut. Ins. Co. of Boston,* 81 Wis. 2d 183, 189, 190, 260 N.W.2d 241 (1977).

The contract in this case is commonly referred to as an exculpatory agreement. The petitioner relies on three clauses in the agreement to avoid liability. They include a release clause, an indemnity clause and an assumption of risk clause. In the absence of legislation to the contrary, such contracts are generally valid. However, since they exempt parties from liability that would otherwise attach, the law does not favor them. Courts closely scrutinize such agreements and construe them strictly against the party seeking to rely on them. *Merten v. Nathan,* 108 Wis. 2d 205, 211, 321 N.W.2d 173 (1982).[2]

[2] As noted in the *Merten* decision, courts often have difficulty adjudicating cases dealing with exculpatory contracts. This reflects the underlying tension that exists between certain principles of contract law and tort law. The law of contracts seeks to protect an individual's freedom to manage his or her affairs without governmental interference. Following this principle, exculpatory agreements should be enforceable. On the other hand, the law of torts disfavors shifting the liability of one's negligent acts for fear that it may tend to induce a want of care. Following this principle, exculpatory agreements should be unenforceable. *Merten,* 108 Wis. 2d at 211–12.

The case law development in Wisconsin concerning these contracts is relatively sparse. The most recent consideration by this court of an exculpatory contract was in *Merten v. Nathan,* 108 Wis. 2d 205. In *Merten,* the plaintiff brought an action for personal injuries suffered while taking horseback riding lessons. The plaintiff had signed an exculpatory contract exempting the defendant horse farm from liability arising from injuries suffered while riding. In that case, a material misrepresentation of fact was found in the contract. Accordingly, the court refused to enforce the exculpatory contract.

Other case law regarding such contracts is found in the area of the landlord-tenant relationship. Significantly, that area of law is now controlled by statute, ch. 704. In *College Mobile Home Park & Sales v. Hoffmann,* 72 Wis. 2d 514, 241 N.W.2d 174 (1976), this court invalidated an exculpatory clause in a lease that purported to absolve the lessor from all liability sustained while the plaintiff was a tenant. In *College Mobile Home,* we stated that courts should take into account the actual effect of the particular contract and carefully examine the facts and circumstances surrounding the relationship between the contracting parties. *Id.* at 519.

The court in *College Mobile Home* denied enforcement of the exculpatory clause because it was so broad as to contravene public policy. There are a variety of other situations in which courts have refused to enforce exculpatory contracts on grounds of public policy. They include: excusing a party from tort liability for harm caused intentionally or recklessly; excusing an employer from liability to an employee for injury in the course of his employment; relieving a party charged with performing a service of great importance to the public; and excusing a party invoking exculpation who possesses a decisive advantage in bargaining strength. *See generally*

Restatement (Second) of Contracts, sec. 195 (1979) ; 57 Am. Jur. 2d, *Negligence,* secs. 24–32 (1971).

None of the aforementioned situations rendering exculpatory contracts invalid on public policy grounds is present in this case. We therefore must look to the contract itself to consider its validity. Specifically, we examine the facts and circumstances of this agreement to determine whether it expresses the intent of the parties with particularity. If the contract fails to do so, it will not be enforced.

At the outset, we take note of the fact that this exculpatory contract is obviously a form release and is used throughout the United States for many automobile racings contests. This belief is confirmed by one provision in the contract which states that the agreement "is intended to be as broad and inclusive as is permitted by the law of the state in which the race is conducted." The contract fails to set out any particular conditions concerning the nature of this race and the facility where it is to take place. We feel such additional information should have been placed in the contract to assure certainty to the parties involved.

More significantly, this exculpatory contract contains very broad and general provisions. It states that its provisions will encompass "all loss or damage and any claim or demands." Exculpatory agreements that are broad and general in terms will bar only those claims that are within the contemplation of the parties when the contract was executed. *See Brown v. Hammermill Paper Co.,* 88 Wis. 2d 224, 234, 276 N.W.2d 709 (1979) ; *Johnson v. Thruway Speedway, Inc.,* 63 A.D.2d 204, 407 N.Y.S.2d 81 (1978) ; *Beardslee v. Blomberg,* 70 A.D.2d 732, 416 N.Y.S.2d 855 (1979) ; In *Plummer v. Leonhard,*

44 Wis. 2d 686, 692, 172 N.W.2d 1 (1969), a contractual release case, we stated:

"While great liberality is allowed in construing releases, the operation will be limited to those things within the contemplation of the parties at the time of execution of the release. *See Rensink v. Wallenfang* (1950), 8 Wis. 2d 206, 213, 99 N.W.2d 196. The determination of intent of the parties to a release, and the scope of a release, is a question of fact for the jury.

" 'The scope of a release, and the intention of the parties that the release shall cover particular claims, are for the jury or other triers of the facts; but where the facts are undisputed, the scope has been held to be for the court.' 76 C.J.S., *Release,* p. 721, sec. 72."

In Karen Arnold's affidavit, she alleged that her husband's injuries were caused by the spraying of toxic fumes during the rescue operation after his car had crashed through the guardrail. The exculpation contract states that it covers any loss, liability or damages whether caused by the negligence of releasees[3] or otherwise. This language is not free of ambiguity. While it it would be reasonable to assume that this exculpatory contract was intended to preclude liability for such things as negligent maintenance of the track or the negligent driving of another driver participant, we cannot conclude that this contract was meant to cover negligent rescue operations. We believe that an issue of material fact exists as to whether the risk of negligent rescue operations was within the contemplation of the parties at the time the exculpatory contract was executed. Since we find an issue of material fact to be in dispute, the trial court abused its discretion by granting the motion for summary judgment.

[3] Releasees included the promoter, participants, racing association, track operator, track owner, landowner and each of them, their offices and employees.

This court recognizes that many decisions from other states have upheld broad exculpatory agreements, even though the consequences to the plaintiff were often harsh.[4] But consistent with this opinion, all of these courts carefully examined the intent of the parties and considered whether there were any possible disputed factual issues that precluded the granting of summary judgment based on the exculpatory contract.

The defendant maintains that if this exculpatory contract is not enforced, promoters will no longer be willing to sponsor automobile racing. We will not decide issues on the basis of threatened consequences. The worth of racing is for the public to decide. We are a sophisticated, modern society where insurance can be used to spread risks. In addition, ticket prices can be adjusted to cover the risks of the entertainment. Events will not go unsponsored so long as the public demands and values that event. It is a public issue also whether the participants should properly be required to bear the entire burden of the risks of providing such events.

In any event, this court is not willing to say that exculpatory contracts for race car drivers are always invalid for any injury; however, they will be strictly scrutinized. We therefore require that the contract clearly express the intent of the parties so that with the surrounding circumstances, it is clear the parties knowingly agreed to excuse one of them from otherwise responsible acts. In this case, it is proper to allow a trier of fact to decide the intent and application of the instant agreement to the facts of the alleged injuries and their cause. The contract was provided by the defendants for

[4] *Tope v. Waterford Racing Corp.*, 81 Mich. App. 591, 265 N.W.2d 761 (1978); *Grbac v. Reading Fair Co., Inc.*, 521 F. Supp. 1351 (W.D. Pa. 1981), *aff'd.* 688 F.2d 215 (3rd Cir. 1982); *Winterstein v. Wilcom*, 16 Md. App. 130, 293 A.2d 821 (1972); *Schlessman v. Henson*, 83 Ill.2d 82, 413 N.E.2d 1252 (1980); *Gore v. Tri-County Raceway, Inc.*, 407 F. Supp. 489 (M.D. Ala. 1974).

execution. If they meant to include rescue operations, it certainly could have been written into the agreement. Even though an attempt was made in the contract to make it all inclusive, ambiguities still exist on its face.

We also note that there may be an additional issue of material fact present in this case. The exculpatory contract by its own terms is limited to injuries sustained within the "restricted area." That area is defined "as the area to which admission for the general public is prohibited, including but not limited to the pit area, racing surface and infield, including walkways, concessions and other appurtenances therein." Karen Arnold's affidavit states that Leroy sustained his injuries after his car left the track area. Whether the contract was meant to encompass actions by the defendants that may have occurred ouside the restricted area may be appropriate for a jury determination.

Regarding Karen Arnold's claim for loss of consortium, the exculpatory contract does not defeat recovery. In *Schwartz v. Milwaukee,* 54 Wis. 2d 286, 293, 195 N.W. 2d 480 (1972), we held that an action for consortium occasioned by a spouse's injury is a separate cause of action which never belonged to the other spouse. The court further noted that regarding a cause of action for loss of consortium, only the defense of the contributory negligence of the owner of the original cause of action would be a valid defense. Other defenses to the injured spouse's action are not available in defending against a claim for loss of consortium. We reaffirmed this principle in *White v. Lunder,* 66 Wis. 2d 563, 574, 225 N.W. 2d 442 (1975), when we stated that "the causal negligence of the injured spouse shall bar or limit the recovery of the claiming spouse pursuant to the terms of the comparative negligence statute."

A spouse's causal negligence can be imputed to the other spouse and defeat recovery for loss of consortium.

However, any other defenses, such as in this case an exculpatory contract, cannot bind to release a spouse's consortium rights. Only if Karen Arnold had signed the agreement would it bind her.

*By the Court.*—The decision of the court of appeals is affirmed.