REPUBLICBANK DALLAS,
N.A., Plaintiff,

v.

FIRST WISCONSIN NATIONAL BANK
OF MILWAUKEE, Defendant.

No. 85–C–68.

United States District Court,
E.D. Wisconsin.

June 6, 1986.

Andrew O. Riteris, David V. Meany, Michael, Best & Friedrich, Milwaukee, Wis., for plaintiff.

Scott W. Hansen, Reinhart, Boerner, van Deuren, Norris & Rieselbach, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

The plaintiff, RepublicBank-Dallas, N.A. (RepublicBank), brings this diversity action alleging that based on material misrepresentations made by the defendant, First Wisconsin National Bank of Milwaukee (First Wisconsin), it was induced to purchase the promissory notes and related documents securing loans made by the defendant to one of its large customers. The plaintiff contends that First Wisconsin misrepresented this customer's financial condition as well as the nature of its business relationship with the customer.

The defendant has now moved for partial summary judgment, seeking dismissal of the plaintiff's claims of fraud by intentional misrepresentation, strict responsibility misrepresentation, breach of the duty to disclose, and for rescission. The defendant's motion does not address the plaintiff's other claims of conspiracy, breach of express warranty, and interference with the parties' contract. The defendant's motion will be granted in part and denied in part.

## FACTUAL BACKGROUND

In early 1982, First Wisconsin extended a $6 million line of credit to the Standard Law Enforcement Company of Wisconsin, Inc. (SECO), and affiliated entities. This line of credit was later increased to $7.5 million. The loans made by First Wisconsin were negotiated and guaranteed by Melvin Gilbert, the president of SECO, who provided the bank with false, unaudited financial statements to procure the loans.

In late 1982, First Wisconsin began experiencing loan repayment and other problems with SECO and its president. First Wisconsin loan officers met with Mr. Gilbert at various times in an attempt to resolve these problems. The plaintiff alleges that SECO made partial interest payments on past-due notes in the spring of 1983, and at First Wisconsin's direction executed backdated renewal notes. According to the plaintiff, the alleged backdating of these notes, later purchased by RepublicBank, concealed SECO's inability to pay interest when due.

In late May 1983, Mr. Gilbert contacted RepublicBank officials, informing them that he was interested in moving his business to Texas, and that he wished to establish a new banking relationship. Following an investigation of Mr. Gilbert and his companies by a RepublicBank account officer and several conversations between employees of RepublicBank and of First Wisconsin concerning Mr. Gilbert and SECO, the plaintiff arranged to purchase the existing notes and security agreements of SECO and related entities from First Wisconsin for over $6.8 million. RepublicBank also extended a $9 million line of credit to SECO. The thoroughness of RepublicBank's investigation and the content of the conversations between the parties are disputed.

Negotiations to draft an assignment agreement were held between First Wisconsin's vice-president and deputy counsel and RepublicBank's Wisconsin counsel in early July 1983. In the final agreement, executed by the parties on July 7, 1983, First Wisconsin warranted that the notes were originals or, in the case of the financing statements, copies of the originals, that none of the loan documents transferred had been altered, revised, amended, or cancelled, and that First Wisconsin's list of documents was accurate. Subject to these conditions, the parties agreed to include the following disclaimer in the assignment agreement:

> "Except as provided in paragraph 2 hereof [the warranties noted above], First Wisconsin has not made any representations or warranties, *express or implied,* with respect to, and it does not assume and has no responsibility or liability for the collectability, enforceability, adequacy or validity of the Loan Documents or the loans and obligations evidenced thereby or the financial status or condition of the Borrowers or any obligor with respect to the Loan Documents or other information furnished to RepublicBank by First Wisconsin. RepublicBank

acknowledges that it has independently determined the collectability, enforceability, adequacy and validity of the Loan Documents and the loans and obligations evidenced thereby and it has made its own appraisal of the Borrowers' creditworthiness."

(Emphasis in original).

SECO defaulted on its loans. RepublicBank now seeks to recover for its losses due to SECO's default, contending that in purchasing the documents securing the loans it relied on First Wisconsin's alleged misrepresentations regarding SECO's financial condition and its banking experiences with SECO and Mr. Gilbert.

## ANALYSIS

First Wisconsin seeks by its motion for partial summary judgment to have the court hold that the disclaimer provision in the assignment agreement bars the plaintiff's four claims based on allegations of misrepresentation by the defendant. RepublicBank asserts in response that the disclaimer is void on public policy grounds, and that, in any case, the plaintiff did not intend the disclaimer to apply to its misrepresentation claims.

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it affects the outcome of the litigation and necessitates a trial to resolve the parties' conflicting version of the truth. *Korf v. Ball State Univ.*, 726 F.2d 1222, 1226 (7th Cir.1984). The court must view the record and any reasonable inferences drawn from it in the light most favorable to the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). The court, however, will accept as true those facts in the movant's affidavits which are uncontroverted. *Wang v. Lake Maxinhall Estates, Inc.*, 531 F.2d 832, 833 (7th Cir.1976).

As a preliminary matter, RepublicBank requests permission to file a brief in response to First Wisconsin's reply brief.

RepublicBank's request is accompanied by a reply brief and a supporting affidavit. The plaintiff's request is based on its contention that First Wisconsin's reply brief raises a new argument outside the permissible scope of reply and contains new factual assertions by way of affidavit regarding the meaning of the dates listed in the assignment agreement for the notes purchased.

■ The alleged new argument in First Wisconsin's reply brief is merely a response to RepublicBank's contention in its answering brief that the disclaimer in the assignment agreement is void because First Wisconsin misrepresented the dates of the notes listed in the agreement. Thus, the challenged argument is within the permissible scope of reply.

■ At the same time, First Wisconsin makes certain factual assertions in its reply brief and supporting affidavits that it did not make in its opening brief. These assertions concern the meaning of the dates describing the notes in the assignment agreement. RepublicBank should have the opportunity to respond to these new assertions. Under Rule 6(b) and (d), Federal Rules of Civil Procedure, all affidavits in support of a motion must be submitted with the motion unless the court, for cause shown, permits later filing. The rule is designed to prevent movants from springing new facts on an opposing party when it is too late for that party to contest them. Now that RepublicBank has responded to these new facts presented by First Wisconsin, however, it is in the interests of justice for the court to consider both the new facts in First Wisconsin's reply brief and RepublicBank's brief in answer to the defendant's reply brief.

Under Wisconsin law, which governs this case, three different torts of misrepresentation are recognized: intentional misrepresentation (often termed "fraudulent misrepresentation"); negligent misrepresentation; and strict responsibility misrepresentation. *Ollerman v. O'Rourke Co.*, 94 Wis.2d 17, 24, 288 N.W.2d 95 (1980).

For purposes of analysis, the plaintiff's challenged claims can be divided into two categories. The first category includes the claims based on intentional or reckless misrepresentation: fraud by intentional misrepresentation, breach of the duty to disclose, and rescission. As to these claims, the court notes that no independent cause of action for recklessly negligent misrepresentation is recognized in Wisconsin. *Id.; Whipp v. Iverson*, 43 Wis.2d 166, 169, 168 N.W.2d 201 (1969). Instead, reckless disregard for the truth or falsity of a representation supports a claim of intentional misrepresentation. *Id.*

The second category includes those claims based on strict responsibility misrepresentation: the strict responsibility claim itself, of course, and the rescission claim to the extent it is based on allegations of strict responsibility misrepresentation.

The defendant reads the plaintiff's breach of duty to disclose claim as based on allegations of simple negligent misrepresentation. It is clear from the plaintiff's brief in answer to the defendant's motion, however, that this claim is based on allegations of intentional and reckless misrepresentation.

The Wisconsin Supreme Court has endorsed the position of the Restatement (Second) of Contracts that exculpatory clauses are unenforceable on public policy grounds where the alleged harm is caused intentionally or recklessly. *Merten v. Nathan*, 108 Wis.2d 205, 212, 321 N.W.2d 173 (1982) (quoting Restatement (Second) of Contracts § 195(1) (1979)); *see also Discount Fabric House of Racine, Inc. v. Wisconsin Tel. Co.*, 117 Wis.2d 587, 595, 345 N.W.2d 417 (1984); *Arnold v. Shawano County Agricultural Soc'y*, 111 Wis.2d 203, 210, 330 N.W.2d 773 (1983). There is ample Wisconsin caselaw in which this general principle has been applied to hold disclaimers of liability ineffective against claims of fraudulent misrepresentation. *See Anderson v. Tri-State Home Improvement Co.*, 268 Wis. 455, 67 N.W.2d 853 (1955); *Morse Chain Co. v. T.W. Meiklejohn, Inc.*, 237 Wis. 383, 296 N.W. 106 (1941); *Jones v. Brandt*, 173 Wis. 539, 181 N.W. 813 (1921); *see also Malas v. Louns-*

*bury*, 193 Wis. 531, 534, 214 N.W. 332 (1927) ("An express agreement made in a contract that it shall be incontestable for fraud is void as against public policy.").

The rationale for this rule was set forth by Judge Hand in *Arnold v. National Aniline & Chemical Co.*, 20 F.2d 364, 369 (2d Cir.1927):

"... the ingenuity of draftsmen is sure to keep pace with the demands of wrongdoers, and if a deliberate fraud may be shielded by a clause in a contract that the writing contains every representation made by way of inducement, or that utterances shown to be true were not an inducement to the agreement, [a party could defraud others] through the simple expedient of placing such a clause ... in the contracts which their dupes are asked to sign."

*See also Anderson, supra*, 268 Wis. at 459–60, 67 N.W.2d 853 (quoting *Bates v. Southgate*, 308 Mass. 170, 31 N.E.2d 551, 558 (1941)).

There is no Wisconsin authority which has limited the rule to cases involving consumers or parties of unequal bargaining power. Quite the contrary, several of the cases to hold disclaimers ineffective to bar fraudulent misrepresentation claims involved agreements between business entities in which there was no issue of unconscionability. *See Badger Bearing Co. v. Burroughs Corp.*, 444 F.Supp. 919 (E.D. Wis.1977), *aff'd*, 588 F.2d 838 (7th Cir. 1978); *Morse Chain, supra*, 237 Wis. at 383, 296 N.W. 106; *Jones, supra*, 173 Wis. at 539, 181 N.W. 813. Nor is there any Wisconsin authority which suggests a different result depending upon the type or specificity of the disclaimer provision involved.

■ The court concludes, therefore, that the disclaimer clause in the assignment agreement does not bar RepublicBank's intentional misrepresentation claim, its breach of duty to disclose claim, or its rescission claim, insofar as this latter claim is based on allegations of intentional and reckless misrepresentation by the defendant. The plaintiff's allegations that First

Wisconsin intentionally and recklessly misrepresented SECO's financial condition and the nature of its banking relationship with SECO raise material issues of fact, thus precluding summary judgment. Accordingly, First Wisconsin's motion for partial summary judgment will be denied as to RepublicBank's claims of fraud by intentional misrepresentation, breach of the duty to disclose, and for rescission.

In contrast to fraudulent misrepresentations, Wisconsin courts have found clauses exculpating parties from their own negligence to be valid, provided the parties' intent is clear and public policy is not violated. *See Arnold v. Shawano County Agricultural Soc'y*, 106 Wis.2d 464, 317 N.W.2d 161 (Ct.App.1982), *aff'd*, 111 Wis.2d 203, 330 N.W.2d 773 (1983); *Queen Ins. Co. of America v. Kaiser*, 27 Wis.2d 571, 135 N.W.2d 247 (1965); *State Farm Fire & Casualty Co. v. Home Ins. Co.*, 88 Wis.2d 124, 276 N.W.2d 349 (Ct.App.1979); *see also Hammer v. Road America, Inc.*, 614 F.Supp. 467 (E.D.Wis.1985) (applying Wisconsin law).

The court believes that the principles governing the effect of exculpatory clauses on claims of negligent misrepresentation logically apply to strict responsibility misrepresentations which involve less culpable conduct by the defendant. *See Whipp, supra*, 43 Wis.2d at 169–70, 168 N.W.2d 201. Strict responsibility for misrepresentation arises in those cases where public opinion dictates that liability for the damage caused by the misrepresentation should be placed on the innocent defendant and not the innocent plaintiff. *Gauerke v. Rozga*, 112 Wis.2d 271, 280, 332 N.W.2d 804 (1983). Unlike the tort of intentional misrepresentation, a defendant's intent to deceive and its good-faith belief in the truth of the challenged representation are immaterial to a claim of strict responsibility misrepresentation. *Whipp, supra*, 43 Wis.2d at 170, 168 N.W.2d 201. Thus, where the parties have allocated the risk of harm in clear terms, the defendant should not be subject to strict liability for its misrepresentations. *Cf. S.A. Empresa de Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 753–54 (9th Cir.1981) (Under California law,

a defendant in a products liability case will not be held strictly liable where the parties have allocated the risks by contract); *Keystone Aeronautics Corp. v. R.J. Enstrom Corp.*, 499 F.2d 146, 149–50 (3d Cir.1974) (Applying same rule under Pennsylvania law).

Because exculpatory clauses exempt parties from liability that would otherwise exist, they are not favored in Wisconsin and are to be strictly construed against parties seeking to rely on them. *Merten, supra*, 108 Wis.2d at 210–11, 321 N.W.2d 173. Thus, an exculpatory clause in an agreement will not bar claims that were not within the contemplation of the parties at the time the agreement was executed. *Arnold, supra*, 111 Wis.2d at 211, 330 N.W.2d 773. The clause must plainly express the intent of the parties "so that with the surrounding circumstances, it is clear that the parties knowingly agreed to excuse one of them from otherwise responsible acts." *Id.* at 213, 330 N.W.2d 773. Although the intention of the parties regarding the scope of such a clause often presents a question of fact, where the facts are not in dispute, the scope of the clause is a question of law for the court. *Id.* at 212, 330 N.W.2d 773 (quoting *Plummer v. Leonhard*, 44 Wis.2d 686, 692, 172 N.W.2d 1 (1969).

In the present case, the plaintiff contends that the intent of the parties as to the scope of the disclaimer in the assignment agreement presents a question of fact. Specifically, the plaintiff claims that it did not intend to release First Wisconsin from liability for intentional, reckless, or strict responsibility misrepresentations. The plaintiff also asserts that the disclaimer does not reach the misrepresentations allegedly made by First Wisconsin concerning its banking relationship with SECO.

The court need not address the question whether the parties intended the disclaimer to cover intentional and reckless misrepresentations, having already concluded that the disclaimer does not shield the defendant from liability for any intentional or reckless misrepresentations. The court, therefore, is left with the issue whether, as

a matter of law, the disclaimer bars the plaintiff's claim of strict responsibility misrepresentation.

The disclaimer in the assignment agreement provides, *inter alia,* that First Wisconsin will not be liable for any express or implied representations regarding the financial condition of SECO and its related entities, the collectibility of the loans and obligations assumed by RepublicBank, or other information furnished by First Wisconsin to RepublicBank. The reference in the first sentence of the disclaimer to "information furnished to RepublicBank by First Wisconsin", when read in context, clearly contemplates representation made by the defendant concerning its banking relationship with SECO. The mere failure to include the words "banking relationship" in the disclaimer does not create an ambiguity as to the scope of the clause.

▮ Nor does the fact that the clause does not expressly spell out its application to strict responsibility misrepresentations create a question of fact as to the applicability of the clause to such misrepresentations. If the disclaimer is interpreted as inapplicable to even "innocent" strict responsibility misrepresentations, the disclaimer's reference to representations made by the defendant to the plaintiff would not make sense. An agreement should be construed to give reasonable meaning to all its provisions; a construction which leaves part of the language meaningless, inexplicable, or mere surplusage is to be avoided. *Goebel v. First Federal Savings & Loan Ass'n,* 83 Wis.2d 668, 680, 266 N.W.2d 352 (1978). The court notes, moreover, that while RepublicBank has submitted affidavits stating that its representatives did not intend to release First Wisconsin from liability for fraudulent misrepresentations, the affiants do not deny intending to reallocate liability for strict responsibility misrepresentations. The court, therefore, finds as a matter of law that the disclaimer applies to the plaintiff's claim of strict responsibility misrepresentation against the defendant.

An exculpatory clause, nonetheless, will not be enforced when the contract of which it is a part contains a material misrepresentation relevant to a reasonable person's decision whether to agree to the disclaimer of liability. *Merten, supra,* 108 Wis.2d at 214–15, 321 N.W.2d 173. This rule is based on the public policy concern that "[m]isstatements by the party seeking the release raise the strong suspicion of inequitable motive and overreaching and of lack of good faith or fair dealing on the part of the party seeking the release and of oppression of the party executing the release." *Id.* at 214, 321 N.W.2d 173.

RepublicBank contends that First Wisconsin misrepresented the dates on which the notes sold to the plaintiff were executed. The plaintiff claims that this alleged backdating of the notes allowed First Wisconsin to conceal SECO's financial problems, thereby inducing RepublicBank to execute the assignment agreement. The *Merten* holding, however, is not applicable to the present matter unless there is some evidence that the defendant led the plaintiff to believe that the dates listed in the agreement referred to the dates the notes had been executed rather than the dates that they became effective and began to accrue interest. There is no such evidence in the record.

First Wisconsin has submitted uncontested affidavits indicating that the renewal notes in issue bear the maturity dates of the notes that they replaced rather than the dates of their execution. First Wisconsin's affiants represent that this is consistent with the general procedure the bank follows in dating renewal notes. Furthermore, the First Wisconsin representative who negotiated the assignment agreement states by way of affidavit that the dates listed in the agreement were taken from the top of each note, were merely descriptive of the notes, and were never represented as the dates on which Mr. Gilbert executed the notes. Finally, the local counsel who negotiated the assignment agreement on RepublicBank's behalf stated in his deposition that he personally examined the original of each note, including the date of each note, and verified that the correspond-

**1476**

ing description in the assignment agreement was valid.

In the face of this evidence, RepublicBank has offered nothing to suggest that First Wisconsin mischaracterized the nature of the dates listed in the assignment agreement. There is no evidence that First Wisconsin led the plaintiff to believe that the dates listed in the agreement referred to something other than the dates actually listed on the notes or that the dates referred to the dates that the notes were executed rather than the dates that they took effect.

RepublicBank has submitted portions of a First Wisconsin commercial loan manual which states that "the date the note is signed by the Borrower is ordinarily the date which should appear in the note." The manual by its own terms, however, is general in nature and "is not intended to cover every fact situation and answer every question." It is uncontested that First Wisconsin follows a different practice in dating *renewal* notes. The plaintiff also has filed a copy of a statement for a renewal note which lists both its date of posting, or execution, and its effective date. That this statement lists both dates scarcely is sufficient to create a triable issue regarding whether First Wisconsin misrepresented the nature of the dates listed in the assignment agreement.

In sum, the uncontested evidence submitted by First Wisconsin establishes that the dates in the agreement accurately describe the dates on the notes themselves and were never represented as the dates that the notes were executed. Thus, because the agreement does not misrepresent the dates of the notes purchased by RepublicBank, this case does not come within the holding of *Merten.*

For the foregoing reasons, First Wisconsin will prevail on its motion for partial summary judgment in regard to RepublicBank's strict responsibility misrepresentation claim. It follows that RepublicBank's claim for rescission also is barred insofar as it is based on allegations of strict responsibility misrepresentation.

CONCLUSION

Therefore, IT IS ORDERED that the plaintiff's motion for leave to file a brief in response to the defendant's reply brief be and hereby is granted.

IT IS ALSO ORDERED that the defendant's motion for partial summary judgment be and hereby is denied as to the plaintiff's claims of fraud by intentional misrepresentation, breach of the duty to disclose, and for rescission.

IT IS FURTHER ORDERED that the defendant's motion for partial summary judgment be and hereby is granted as to the plaintiff's strict responsibility misrepresentation claim.