**Roy CADEK, Plaintiff,**

v.

**GREAT LAKES DRAGAWAY, INC., Defendant.**

**No. 93 C 1402.**

United States District Court, N.D. Illinois, E.D.

Feb. 4, 1994.

Bradley Stephen Block, Foley & Lardner, Chicago, IL, for plaintiff.

Kevin Joseph Burke, Steven R. Bonanno, Hinshaw & Culbertson, Chicago, IL, for defendant.

### *OPINION AND ORDER*

NORGLE, District Judge:

Before the court is the motion of defendant Great Lakes Dragaway, Inc. ("Great Lakes") for summary judgment. For the following reasons, the motion is granted in part and denied in part.

## FACTS [1]

The material facts are not in dispute. Plaintiff Roy Cadek ("Cadek") is a citizen of the State of Illinois. Great Lakes is a Wisconsin corporation with its principal place of business in Union Grove, Wisconsin. Great Lakes is engaged in the business of operating an automobile racetrack.

On July 17, 1992, Cadek paid a fee to Great Lakes in order to drive his funny car, named "Risky Asset," at Great Lakes Dragaway racetrack located in Union Grove, Wisconsin. Prior to driving Risky Asset on Great Lakes' track, Cadek signed a release discharging Great Lakes from potential liability that may result from any and all negligence, including negligent rescue operations.

After executing the release, Cadek operated his vehicle on the racetrack. While driving Risky Asset on the track, Cadek collided with a nameless van parked on the edge of the racetrack. Coincidentally, the parked van was also owned by Cadek. The collision itself was a minor collision; however, the impact of the collision caused a fuel spill which ignited. The ensuing flame caused considerably more damage to Risky Asset and the van than the impact of the collision.

On March 8, 1993, Cadek filed a five-count complaint against Great Lakes alleging breach of contract, negligence, negligent misrepresentation, misrepresentation, and fraud. The crux of the complaint is that Great Lakes failed to equip the racetrack facility with an adequate fire extinguishing system. The only alleged available method of extinguishing fire on the track was an exterior water spigot and a garden hose. In response to the complaint, Great Lakes filed a motion for summary judgment in lieu of an answer.[2]

Great Lakes argues that there is no genuine issue of material fact and that Cadek's claims are barred as a matter of law because he executed a release. The court agrees that the facts as stated in Great Lakes 12(m) statement are not in dispute and that Great Lakes is entitled to summary judgment as to Count II; however, the court disagrees that the mere existence of a release prohibits Cadek from maintaining Counts I, III, IV and V against Great Lakes as a matter of law.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that for a party to prevail on a summary judgment motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992), a scintilla of evidence in support of the nonmovant's position will not suffice to oppose a motion for summary judgment. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). Instead, the nonmoving party must elucidate specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

Moreover, to preclude summary judgment the disputed facts must be those that might affect the outcome of the suit, *First Indiana Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992), and a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The subject release that was executed by Cadek as a condition precedent to driving on the racetrack is commonly referred to as an exculpatory contract. An exculpatory con-

---

1. The following facts are drawn from the statements of undisputed facts submitted by the parties in compliance with Local Rules 12(m) and (n) of the Rules of the United States District Court for the Northern District of Illinois, pleadings, and affidavits.

2. Rule 56(b) of the Federal Rules of Civil Procedure permits a defending party to move for summary judgment "at any time." Fed.R.Civ.P. 56(b). Thus, a defending party may file a motion for summary judgment prior to filing an answer to the complaint. *See Pruitt v. Chow*, 742 F.2d 1104, 1109 n. 5 (7th Cir.1984).

tract is an agreement to release one or more individuals or entities from liability resulting from any negligent act or omission or other wrongful conduct committed by those individuals or entities. *Dobratz v. Thompson,* 161 Wis.2d 502, 468 N.W.2d 654, 656 n. 1 (Wis.1991). Thus, the court must determine whether the exculpatory contract in this case is an enforceable agreement.

■ In order to address the issue of whether the release executed by Cadek is enforceable, thus barring him from maintaining the instant action, the court applies the law of Wisconsin. It is a well settled principle that the district court, exercising diversity jurisdiction over the parties and sitting in the State of Illinois, must apply Illinois' choice-of-law rules and statutes of limitations. *Anabaldi v. Sunbeam Corp.,* 651 F.Supp. 1343, 1344 (N.D.Ill.1987); *see also Colonial Penn Life Ins. Co. v. Assured Enterprises, Ltd.,* 151 F.R.D. 91, 95 (N.D.Ill. 1993). Illinois applies the "most significant contacts" test to determine the applicable law in tort cases. *Vantassell–Matin v. Nelson,* 741 F.Supp. 698, 702 (N.D.Ill.1990) (citing *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593, 595 (1970)). The court finds, and the parties agree, under the most significant contacts test, the applicable law in the instant action is Wisconsin law.

Wisconsin courts have employed a two-step analytical approach in determining whether an exculpatory agreement is enforceable. *See Hupf v. City of Appleton,* 165 Wis.2d 215, 477 N.W.2d 69, 73 (Wis.Ct.App. 1991); *Trainor v. Aztalan Cycle Club, Inc.,* 147 Wis.2d 107, 432 N.W.2d 626 (Wis.Ct.App. 1988). The first step of the analysis is to resolve whether the subject exculpatory clause is void and unenforceable on public policy grounds. *Hupf,* 477 N.W.2d at 73. If the exculpatory clause is not void on public policy grounds, the next step of inquiry is whether the terms of the agreement "clearly express the intent of the parties so that with the surrounding circumstances, it is clear the parties knowingly agreed to excuse one of them from otherwise responsible acts." *Arnold v. Shawano County Agricultural Society,* 111 Wis.2d 203, 330 N.W.2d 773, 779 (1983).

■ Under Wisconsin law, exculpatory agreements are generally valid and enforceable. *Arnold,* 330 N.W.2d at 777. In the racing context, most jurisdictions routinely recognize and enforce exculpatory clauses. *Hammer v. Road America,* 614 F.Supp. 467, 470 (D.C.Wis.1985); *see also Trainor,* 432 N.W.2d at 631 (collecting cases). Wisconsin law, however, does not favor exculpatory agreements because such agreements shield parties from their negligent and wrongful conduct. *Arnold,* 330 N.W.2d at 777. Therefore, Wisconsin courts closely scrutinize exculpatory agreements and construe them strictly against the party seeking enforcement. *Id.*

The first step of the analysis requires the court to examine the facts and the circumstances surrounding the case to determine whether those facts fall within one of the situations making the release contrary to public policy. *Dobratz,* 468 N.W.2d at 658. Section 195 of the *Restatement (Second) of Contracts* (1979), an authority relied on with approval by the Wisconsin courts, lists those situations in which exculpatory clauses are void on grounds of public policy:

(1) A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy. (2) A term exempting a party from tort liability for harm caused negligently is unenforceable on grounds of public policy if (a) the term exempts an employer from liability to an employee for injury in the course of his employment; (b) the term exempts one charged with a duty of public service from liability to one to whom that duty is owed for compensation for breach of that duty, or (c) the other party is similarly a member of a class protected against the class to which the first party belongs. (3) A term exempting a seller of a product from his special tort liability for physical harm to a user or consumer is unenforceable on grounds of public policy unless the term is fairly bargained for and is consistent with the policy underlying that liability.

*Id.* at 659 (quoting *Restatement (Second) of Contracts,* § 195 (1979)). A misstatement of a fact in the exculpatory clause may also

invalidate the release agreement on grounds of public policy. *Merten v. Nathan,* 108 Wis.2d 205, 321 N.W.2d 173, 178 (1982).

■ In the present case, the facts and circumstances surrounding the execution of the release agreement dictate that the agreement is not void or unenforceable as contrary to public policy. The exculpatory clause neither falls within any of the categories listed under § 195 of the *Restatement (Second) of Contracts* (1979) nor contains a misstated fact. Rather, the exculpatory clause involved in this case is generally valid and widely used in the context of automobile races. *See Trainor,* 432 N.W.2d at 631.

The reason for the use of exculpatory agreements in the context of automobile races is the danger associated with operating a powerful vehicle with capabilities to accelerate quickly to speeds uncontrollable by an average driver. Responsible drivers of high speed machines, such as Risky Asset and other race cars, understand the danger of high speed, the risk of collisions and explosions, and the potential for great bodily harm or death. Those elements of danger may serve to lure risk taking individuals to control a potentially explosive capsule and to travel at speeds unimaginable to every day drivers. Under these circumstances, and the facts present in this case, the court finds that the subject exculpatory clause is not void as contrary to public policy as a matter of law.

Cadek argues that the exculpatory clause should be invalidated because Great Lakes defrauded Cadek and gave false information to him prior to executing the agreement. The court rejects Cadek's contention that *Merten* is applicable to the case *sub judice.* In *Merten,* the misrepresentation was inserted in the agreement. The relevant portion of the agreement in *Merten* stated that the defendants did not carry liability insurance, and thus, release was necessary prior to engaging in equestrian activities. *Merten,* 321 N.W.2d at 175. In the present case, Cadek fails to adduce any evidence to demonstrate or even suggest that Great Lakes represented that the firetruck located on the premises of Great Lakes was manned to assist the users of the racetrack or that it was material to signing the release. Thus, the mere presence of a firetruck on the racetrack grounds is insufficient to void the exculpatory contract on the grounds that Great Lakes misrepresented itself to Cadek.

■ Having determined that the exculpatory clause is not void as contrary to public policy, the court must address the issue of whether the exculpatory clause expresses the intent of the parties with particularity. *Dobratz,* 468 N.W.2d at 660. In other words, the court must determine whether the claims asserted by Cadek was clearly within the contemplation of the parties when the agreement was executed. *Id.* at 661. In determining the scope of the exculpatory clause, the clause must be strictly construed against Great Lakes. *Id.*

The relevant portions of the release state as follows:

I HAVE READ THIS RELEASE ... FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT [I] HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND HAVE SIGNED FREELY AND VOLUNTARILY WITHOUT ANY INDUCEMENT, ASSURANCE, OR GUARANTEE BEING MADE TO ME AND INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW.

the undersigned.... 5. HEREBY acknowledges that THE ACTIVITIES OF THE EVENT(S) ARE VERY DANGEROUS and involve the risk of serious injury and/or death and/or property damage. Each of the UNDERSIGNED also expressly acknowledges that INJURIES RECEIVED MAY BE COMPOUNDED OR INCREASED BY NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASES.

Deft.'s Mot. Sum. Judg. at 2–3. Looking at this release contract and strictly construing the terms against Great Lakes, the agreement was intended to preclude liability for negligent maintenance of the track, negligent driving of other users of the track, negligent rescue operation, and other dangers associated with operating a drag car.

The critical portion of the agreement is that portion regarding release of liability that may result from negligent rescue operations. The injury complained of by Cadek stems from Great Lakes' alleged failure to equip the track with an adequate fire extinguishing system. The court finds that the exculpatory agreement contemplated the allegations asserted under Count II, negligence. Furthermore, when the allegations are stripped to their bare essentials, Cadek is complaining that damages to his vehicles were aggravated and compounded by Great Lakes' failure to provide rescue operations. Cadek fully understood and recognized that collisions between Risky Asset and other vehicles may result in explosions or fires. Thus, the two-step analysis mandates that the exculpatory agreement precludes liability that may arise under Count II.

■ As to the remaining counts, however, the exculpatory clause did not contemplate actions of breach of contract, misrepresentation, and fraud. The release agreement, when viewed as a whole, strongly suggests that its purpose is to shield Great Lakes from potential liability that may follow from injuries sustained during drag races.

The agreement, however, cannot be construed to preclude liability that may be attached as a result of Great Lakes' alleged misrepresentation or breach of binding terms of a contract. Great Lakes' motion for summary judgment focuses only on the legal effect of the release. If the court were to hold that such liability is precluded by the operation of the release, Great Lakes may accept the user's fee, deny Cadek access to the racetrack, and assert the release as a defense. This example may be exaggerated, but it illustrates the danger of construing the release broadly, rather than narrowly. Thus, within the context of Great Lakes' motion for summary judgment motion, the release does

not as a matter of law prevent Cadek from maintaining Counts I, III, IV, and V.[3]

### CONCLUSION

For the foregoing reasons, Great Lakes' motion for summary judgment is granted in part and denied in part.

IT IS SO ORDERED.

3. The court is fully aware of the special pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure and the need for Cadek to allege sufficient facts to state particular causes of action. Nonetheless, Great Lakes filed the motion for summary judgment without denying the allegations in the complaint and failing to set forth any uncontested material facts as to these counts. Under these circumstances, it would be premature for the court to rule beyond the issues with respect to the validity of the release and its legal effect on the complaint as they are raised in Great Lakes' motion for summary judgment. Therefore, the court will revisit the issue of whether these counts are viable causes of action under Wisconsin law when a more appropriate motion is filed or after the parties have had an opportunity to conduct some level of discovery.