Joan R. MANOR, individually and as Personal Representative of the Estate of Neil D. Manor, Sr., deceased, Plaintiff-Respondent-Petitioner,

v.

Anna HANSON and Milwaukee Guardian Insurance Inc., a Wisconsin insurance corporation, Defendants-Respondents,

TREMPEALEAU COUNTY and General Casualty Company of Wisconsin, a Wisconsin insurance corporation, Defendants-Appellants-Cross-Petitioners.

Supreme Court

No. 83-2031. Argued February 26, 1985.—Decided May 22, 1985.

(Also reported in 368 N.W.2d 41.)

For the plaintiff-respondent-petitioner there were briefs by *William A. Adler* and *Adler and La Fave,* Eau Claire, and oral argument by *William A. Adler.*

For the defendants-appellants and cross-petitioners there were briefs by *Francis J. Wilcox, Daniel A. Enright* and *Wilcox & Wilcox,* Eau Claire, and oral argument by *John F. Wilcox.*

For the defendants-respondents there was a brief by *Douglas M. Johnson* and *Garvey, Anderson, Kelly & Ry-*

*berg, S.C.,* Eau Claire, and oral argument by *Beverly Wickstrom,* Eau Claire.

WILLIAM A. BABLITCH, J.   Joan R. Manor (Manor) appeals that part of a court of appeals' decision which held that the motor vehicle driven by Anna Hanson (Hanson), which negligently caused the death of Manor's husband, was not a motor vehicle within the meaning of sec. 345.05 (2), Stats., because it was not rented or leased by Trempealeau county (County). The court of appeals also held that Hanson was acting as a servant of Trempealeau county at the time of the accident. The effect of these decisions was to limit Trempealeau county's liability to $25,000, the limit of municipal liability set forth in sec. 893.80 (3), 1979–80, rather than $296,550.50, the award set by the jury verdict. Trempealeau county cross-petitions, appealing that part of the court of appeals' decision which held that Hanson was acting as a servant of the County at the time of the accident. Because the Hanson vehicle was owned and operated by the County during the course of its business, we conclude that it was a motor vehicle within the meaning of sec. 345.05 (2). We therefore reverse the court of appeals' decision.

The facts surrounding this review are undisputed. Joan Manor's husband was killed in an automobile accident with a car driven by Anna Hanson. At the time of the accident, Hanson, as a volunteer in the Trempealeau County Volunteer Transportation Program, was driving a woman to a doctor's appointment. Hanson's passenger was a beneficiary of this program. Under this volunteer program, Hanson and other volunteers provided transportation in their own automobiles to elderly and handicapped persons.

Manor brought suit against Hanson, the County, and their insurers, on her own behalf and in her capacity

as a personal representative of her husband's estate, proceeding on the theory that as a volunteer driver, Hanson was a servant of the County, and that therefore the County was liable for her negligence pursuant to sec. 893.80(3), Stats. Alternatively, Manor contended that the Hanson vehicle was a motor vehicle within the meaning of sec. 345.05(2), because at the time of the accident the Hanson vehicle was rented or leased by Trempealeau county and was being operated in the course of the County's business. Therefore, Manor argued that, pursuant to sec. 345.05(3), there was no limitation on the County's liability. Sections 345.05(2) and (3) are set forth in full below.[1] Manor continues to raise this argument before this court.

The relationship between Trempealeau county and Hanson is important to the disposition of this case. Thus, the nature of their arrangement and the structure of the Trempealeau County Volunteer Transportation Program itself is critical.

Trempealeau county administered a Title XX federal grant which required the County to provide transportation services to the elderly and handicapped population of Trempealeau county. Although the grant was not

[1] Sections 345.05(2) and (3), Stats., provide:

"(2) A person suffering any damage proximately resulting from the negligent operation of a motor vehicle owned and operated by a municipality, which damage was occasioned by the operation of the motor vehicle in the course of its business, may file a claim for damages against the municipality concerned and the governing body thereof may allow, compromise, settle and pay the claim. In this subsection, a motor vehicle is deemed owned and operated by a municipality if the vehicle is either being rented or leased, or is being purchased under a contract whereby the municipality will acquire title.

"(3) A claim under this section shall be filed in the manner, form and place specified in s. 893.80. The limitations under s. 893.80(3) are not applicable to a claim under this section."

made part of the record, Trempealeau county conceded at oral argument that the essence of the grant was providing transportation services. The recipients of the transportation services had to be age 60 or older, or handicapped, and had to reside within the County. The program utilized volunteers who were solicited by the County for that purpose, and who used their own vehicles.

The prospective volunteers had to complete an initial registration form and had to go through an orientation with a social worker. At this orientation, they were asked about the days and hours they were available, whether they had a valid Wisconsin driver's license, whether they had an available automobile with certain minimum levels of insurance coverage, and whether they were in good health. The volunteers were advised that their insurance was primary insurance and that the County had secondary insurance.

If all the information was in order, the volunteer and the County entered into a signed agreement, in which the volunteer agreed to:

"1. Endeavor to understand and accept the passengers with whom I come in contact.
"2. Respect the CONFIDENTIALITY of the passengers.
"3. Participate in initial orientation and group meetings as become necessary.
"4. Perform the tasks set forth in the Volunteer referral and only those tasks.
"5. Be faithful in keeping appointments and adhering to the agreed upon schedule.
"6. Report promptly any impending absence so that a replacement can be found to carry on my assignment.
"7. Report any accidents to my captain.
"8. Notify the captain or volunteer coordinator on discontinuance of services."

The Trempealeau County Volunteer Transportation Program agreed to:

"1. Designate the transportation services to be provided.

"2. Provide initial orientation and periodic group meetings for Volunteers.

"3. Strive for a climate of cooperation and mutual respect between Program Staff and Volunteers."

In addition to this agreement, the County provided the volunteers with a set of guidelines:

"1. Be prompt for appointments. Notify rider if you will be late. This avoids unnecessary worry.

"2. Be friendly and cheerful; be a good listener.

"3. Avoid controversy in your conversations.

"4. Refrain from making suggestions about medical information.

"5. If rider asks questions about social service programs, refer him to proper sources.

"6. Refrain from giving and accepting valuable gifts from riders.

"7. Be alert to riders [sic] comfort. For example, fatigue or illness.

"8. Riders may wish to contribute toward the transportation cost. Have a container available for this. This money will be turned over to the Volunteer Coordinator or someone will be designated to pick it up.

"9. Keep accurate records of mileage and send them to the Volunteer Coordinator on the last day of each month."

The program was structured in the following way. Each volunteer driver was assigned to a block captain. Beneficiaries of the program who needed transportation would contact the block captain, who would then relay this information to the volunteer driver. The block captain would tell the volunteer driver whom to pick up, where and when to pick them up and where they were to go. This system broke down in practice as beneficiaries became aware of the identity of the volunteer drivers and began to contact them directly.

The volunteer drivers were given a mileage chart to record the date they provided service, the name of the

passenger, the purpose of the trip, the starting point and destination of the trip, and the amount of time and number of miles involved in making the trip. These charts were turned in to the County and the County would, on a monthly basis, pay the volunteer drivers at the rate of $.19 per mile for the number of miles traveled. The volunteer drivers carried a container in their cars for contributions. Money that was collected was turned over to the County.

The program did not maintain a list of its recipients and usually had no advance knowledge of the rides that were given. No meetings were held with the volunteer drivers after the initial orientation. Ordinarily, the volunteer driver made the decision as to whether the rider was entitled to be transported by determining if the rider qualified for the program by virtue of his or her age or handicap. On occasion, the volunteer would consult with the administrator of the program to determine an individual's entitlement. The transportation service was provided at the convenience of the volunteer driver. The volunteer driver was not required to make a particular trip if he or she did not want to and could withdraw from the program at any time.

At trial, the jury found that Hanson was 100 percent negligent and awarded the plaintiff $296,550.50. The trial court concluded that the County's payment of a flat fee of $.19 per mile to Hanson for the use of her vehicle demonstrated that the County was in fact renting the use of her automobile at the time of the accident, and that the use of the vehicle was within the course of its business. Thus, the trial court held that the Hanson vehicle was a motor vehicle within the meaning of sec. 345.05(2), Stats., and therefore there was no statutory limitation on the County's liability. The trial court also ruled, on motions after the verdict, that the limitation of liability set forth under sec. 893.80(3) did apply to Hanson because she was an agent of the County at the time of the acci-

dent. *See Shannon v. Milwaukee,* 94 Wis. 2d 364, 369, 289 N.W.2d 564 (1980) ("Sec. 345.05, Stats., by its plain language, refers only to the liability of state or municipal owner of the vehicle, not that of the employee driver.") Accordingly, the trial court entered judgment, and held Hanson and the County jointly liable for $25,000, and the County and its insurer also liable for $271,558.50, the balance of the total damages.

Trempealeau county appealed arguing that it was not vicariously liable for Hanson's negligence pursuant to sec. 893.80(3), Stats. nor was it liable pursuant to sec. 345.05(2). Neither Hanson nor Trempealeau county appealed the trial court's ruling limiting Hanson's liability, pursuant to sec. 893.80(3), Stats. 1979–80 (which was formerly sec. 895.43 1977–78) to $25,000. In a published opinion, the court of appeals held that the County's use of the Hanson vehicle did not constitute a rental or leasing of that vehicle within the meaning of sec. 345.05(2), Stats. *Manor v. Hanson,* 120 Wis. 2d 582, 586–87, 356 N.W.2d 925 (Ct. App. 1984). Thus, the court of appeals reversed that portion of the trial court's judgment. The court of appeals affirmed that portion of the trial court's decision which held that Hanson was a servant of Trempealeau county at the time of the accident and that therefore the County was liable for her negligence pursuant to sec. 893.80(3). *Id.* at 586. Accordingly, the court of appeals directed the trial court to enter judgment holding that the County's liability was limited to $25,000, pursuant to sec. 893.80(3) 1979–80, set forth below.[2] *Id.* at

---

[2] "(3) The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employees for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally,

587. Manor and Trempealeau county subsequently filed petitions for review which were granted by this court. The issue of Hanson's personal liability is not raised in this review.

The issue we review is: Was the Hanson vehicle owned and operated by Trempealeau county and operated in the course of its business, within the meaning of sec. 345.05 (2), Stats., at the time of the accident? We conclude it was.

Section 345.05 (2), Stats., eliminates the dollar limitation of liability for tort claims against municipalities, set out in sec. 893.80 (3), in cases resulting from the negligent operation of a motor vehicle owned and operated by a municipality if the vehicle was operated in the course of the municipality's business. Business is defined by the statute as "any business whether governmental or proprietary." Section 345.05 (1) (a). A motor vehicle is deemed to be "owned and operated" by the municipality if the vehicle is either being "rented" or "leased" by the municipality. Neither of these terms is defined in the statute.

In this case, the jury made the determination at trial that Neil Manor's death resulted from Hanson's negligent operation of her motor vehicle. The trial court determined that the Hanson vehicle was a motor vehicle which was owned and operated by Trempealeau county, in the course of its business, within the meaning of sec. 345.05 (2), Stats., at the time of the accident. The court of appeals, in reversing this part of the trial court's judgment, held that the trial court erred in ruling that the County had owned and operated Hanson's automobile within the meaning of the statute. *Manor* at 586.

In order for Trempealeau county to be liable for the entire jury award in this case we must determine: (1) whether the vehicle was "owned and operated" by the

shall not exceed $25,000. No punitive damages may be allowed or recoverable in any such action."

This section was formerly numbered sec. 895.43(3), 1977–78.

County at the time of the accident; and (2) whether the operation of the motor vehicle at the time of the accident was "in the course of [the County's] business." Section 345.05(2), Stats.

The answer to these questions requires interpretation of sec. 345.05(2), Stats. Interpretation of a statute in relation to a set of undisputed facts is a question of law which this court may review without deference to the court being reviewed. *First Nat. Leasing Corp. v. Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251 (1977).

We first determine whether the vehicle was "owned and operated" by the County at the time of the accident within the meaning of sec. 345.05(2), Stats. The statute provides that a vehicle is "owned and operated" if it is being rented by the County.

The definition of "rented" does not appear in the statute, and must therefore be construed according to its particular meaning in the law. Section 990.01, Stats.[3] Black's *Law Dictionary*, defines "rent" as: "[c]onsideration paid for use or occupation of property. In a broader sense, it is the compensation or fee paid, usually periodically, for the use of any property, land, buildings, equipment, etc." Black's *Law Dictionary*, Special Deluxe Fifth Edition, 1166 (5th ed. 1979). In *Voluntary Assign. of Watertown Tr. & Equip. Co.*, 94 Wis. 2d 622, 289 N.W.2d 288 (1980), this court, in construing the term "rental," referred to Webster's *New International Dictionary* 1923 (3rd ed. unabridged (1967)), and determined that "rental" is " 'property (as an apartment,

---

[3] "990.01 Construction of laws; words and phrases. . . .

"(1) GENERAL RULE. All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."

automobile, dinner jacket) that is given for use in return for payment.' " *Id.* at 638. It "refers generally to property given to another for use in return for money, etc." *Id.* The question to be resolved, therefore, is whether at the time of the accident the County provided "compensation or a fee" for the "use" of Hanson's motor vehicle.

The conclusion that this was a "use" by the County is inescapable. The accident occurred while Hanson was transporting a passenger in the Trempealeau County Volunteer Transportation Program. The County, in using the Title XX federal grant funds which they had accepted, was required to secure the use of vehicles in order to provide transportation services. The County chose to use the vehicles of its volunteer drivers rather than engaging in some other course of action such as purchasing its own vehicles. Whenever Hanson provided transportation services to beneficiaries of the program, she did so as a volunteer of the County. Thus the County, not the volunteer driver, was making use of the volunteer's vehicle while the transportation services were provided. The County, not the volunteer, was deriving the benefits of the use of the vehicle. We find this conclusion particularly evident given that any contributions which were made to the volunteer drivers by the beneficiaries were required to be turned over to the County. Any "valuable gifts" offered by the beneficiaries to the volunteer could not be accepted by the volunteer. This was clearly a "use" by the County within the meaning of the statute.

It is equally inescapable that the payment to Hanson by the County of a flat fee of $.19 a mile, on a monthly basis, was a compensation to Hanson for the use of her vehicle to transport certain persons in discharge of the County's obligation under the grant. Volunteer drivers were required to keep accurate records of mileage and to submit them to the County at a designated time each month. The County, in turn, would pay the volunteer

drivers at the rate of $.19 per mile for the number of miles traveled. The payment of $.19 a mile constituted a "compensation or fee paid, usually periodically, for the use of [Hanson's vehicle]." Black's *Law Dictionary*, Special Deluxe 5th edition, 1166. Therefore, the County was renting Hanson's vehicle within the meaning of sec. 345.05(2), Stats., at the time of the accident.

We next determine whether Hanson's vehicle was being operated in the course of the County's business at the time of the accident. The County, in administering the Title XX federal grant, undertook the responsibility of providing transportation services to the aged and handicapped population of Trempealeau county. The County established an entire program to accomplish that end. At oral argument, Trempealeau county acknowledged that the essence of the grant was to provide transportation services. Thus, in accepting the federal funds and administering the Volunteer Transportation Program, the County was in effect operating a transportation services business.

At the time of the accident, the negligently driven motor vehicle was operated by Hanson in discharging the County's obligations under the program grant. She was transporting an aged person who was a beneficiary of the County's transportation program. We therefore conclude that the "damage [to Neil Manor] was occasioned by the operation of the motor vehicle in the course of [the County's] business." Section 345.05(2), Stats. *Cf. Raube v. Christenson*, 270 Wis. 297, 70 N.W.2d 639 (1955).

The County argues that if this court adopts the position urged by Manor and holds that the Hanson motor vehicle was a motor vehicle within the meaning of sec. 345.05(2), Stats., this court would eliminate municipal liability limits in all cases where municipal employees receive reimbursements for the use of their own cars in

performing their duties as agents of the municipality. The County relies on *Jorgenson v. Sparta,* 224 Wis. 260, 262, 271 N.W. 926 (1937), in support of this argument.

We find that the County's argument fails to take into account that Hanson's motor vehicle was used for the purpose of transporting beneficiaries of the County's program, not the driver. The County's "course of business" was transporting people. In *Lemon v. Federal Ins. Co.,* 111 Wis. 2d 563, 331 N.W.2d 379 (1983), this court found that a tractor owned by the municipality and used to repair a roadside culvert was operated in the course of the County's business because "(d)igging ditches and repairing culverts along highways are activities within Dane county's course of business." *Id.* at 568. The situation here is parallel.

In *Lemon,* the business activity of the County was digging ditches and repairing culverts. The vehicle used to perform that business was the tractor. Here, the business activity of Trempealeau county was transporting elderly and handicapped persons. The vehicle used to perform that business was the Hanson vehicle.

■
Whether employees receive reimbursements for the use of their motor vehicles in transporting themselves from one place to another is not controlling for purposes of determining whether the vehicle used is a motor vehicle within the meaning of sec. 345.05(2), Stats. What is essential is whether the vehicle is used to conduct the actual business activity of the County. The Hanson vehicle was used for that very purpose.

■
Having determined that the County rented Hanson's vehicle, we conclude that the Hanson vehicle was owned and operated by Trempealeau county, within the meaning of sec. 345.05(2), Stats., and that the accident occurred while the vehicle was operated in the course of its busi-

ness. Therefore, we do not reach the issue of whether Hanson was a servant of Trempealeau county at the time of the accident. It is not necessary to make this determination in this case because the only issue before this court is the County's liability and we have concluded that the County's liability is predicated upon its having owned and operated the Hanson vehicle at the time of the accident. Thus, the existence of a master-servant relationship betwen Trempealeau county and Hanson is extraneous to a determination of the County's liability. Accordingly, we reverse the court of appeals and reinstate the judgment entered by the trial court holding Hanson and the County and their insurers jointly and severally liable for $25,000 and the County and its insurer liable for the balance of the total damages.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (concurring). I concur in the result. I do not, however, join the majority opinion.

I cannot join the court's discussion of what constitutes "course of business" and "rented or leased," because it is unnecessarily broad. I object to the dicta (p. 532) intimating that sec. 893.80(3), which limits municipal liability ($25,000, then; $50,000 now), applies (or conversely that sec. 345.05(2), removing those limits, does not apply) to injuries caused by the negligent operation of a car by a municipal employee who receives reimbursement for the use of her or his own car and is transporting herself or himself from one place to another in the course of duties for the municipality. Any decision regarding specific factual situations should not be made until those facts are squarely before the court.