DAVID J. HERRICK, District Attorney Florence County
You have requested my opinion as to whether a document entitled "Volunteer Registration Form," which accompanied your request, absolves Florence County from liability in the event a client of the county's Human Services Department is injured or killed while being transported by a driver who volunteers for the purpose.
It is my opinion that the form as drafted is ineffective to release the county from liability. Moreover, even a properly drafted "exculpatory contract" may not survive scrutiny as against public policy.
According to your correspondence, Florence County's Human Services Department utilizes volunteer drivers to furnish transportation services to its clients. Volunteers use their personal vehicles and are reimbursed for mileage. They receive no other compensation. In addition, I learned that only medical assistance (MA) eligible persons are clients, that MA transportation funds are used to pay mileage, and that these funds consist of both federal and state monies.
As a threshold matter, and to remove any doubt you have, there is no question that, given these circumstances, the county may be held liable. The supreme court settled the issue in Manor v.Hanson, 123 Wis.2d 524, 368 N.W.2d 41 (1985). Under facts strikingly similar to those you present, the Manor court concluded that the county in effect "rented" the volunteers' vehicles in the course of the county's business and, *Page 24 
therefore, the county was exposed to liability under section345.05(3), Stats. Id. at 536-37. In effect, section 345.05(3) imputed to the county the negligence of its volunteer driver. Thus, Florence County is likewise exposed to liability through its volunteer driver program.
It is important to note that the decision in Manor was not based upon an agency theory of liability. Indeed, the supreme court expressly eschewed reliance on any master-servant relationship between the county and the volunteer driver, concluding that that question was "extraneous" to determining the county's liability. Id. at 537. Thus, section 893.80, which is generally implicated whenever a plaintiff seeks to hold a county responsible for the acts of its officials, employes or agents, does not apply in the case of a negligent volunteer driver. SeeLemon v. Federal Ins. Co., 111 Wis.2d 563, 564-65,331 N.W.2d 379 (1983) (implies sections 345.05 and 893.80 [formerly 895.43] are mutually exclusive).
Recognition of the proper basis upon which liability is grounded is important in assessing the extent of the county's possible exposure. If liability stemmed from section 893.80, then the maximum exposure is $50,000.00. Sec. 893.80(3), Stats. However, since the supreme court in Manor clearly held that section 345.05 governs, the county's exposure is $250,000.00. Sec. 345.05(3), Stats.
The county seeks to avoid liability through the use of the form which volunteer drivers are required to complete. A document which purports to limit or avoid liability is known as an exculpatory contract. While these contracts are generally valid, they will be closely scrutinized and construed against the party who seeks to rely on them. Arnold v. Shawano County Agr. Society,111 Wis.2d 203, 209, 330 N.W.2d 773 (1983), overruled on othergrounds, Green Spring Farms v. Kersten, 136 Wis.2d 304, 317,401 N.W.2d 816 (1987). Principles of contract law apply, however, to effectuate the intention of the parties. 76 C.J.S. Release § 38 (1952). *Page 25 
You ask whether the county may avoid liability to a client if the volunteer driver executes the form. Clearly not. The client is not a party to the document, and thus is not bound by any release. See Arnold, 111 Wis.2d at 214-15. Likewise, separate causes of action which could be maintained by members of the client's family will not be extinguished unless they, too, are parties to the form. Id.
Moreover, even if a client and family members executed a document containing substantially similar language, the document will not release the county from liability. The only language which arguably purports to do so is as follows:
 I also understand that all individual drivers are responsible for insurance coverage and also for all traffic violations and accidents. The Florence County Human Services Department does not assume this responsibility.
This language is deficient in a number of respects. It fails to state any particular conditions regarding the nature and scope of the transportation service. Cf. Arnold, 111 Wis.2d at 211
(exculpatory contract signed by race car driver found ambiguous where it failed to specify conditions concerning nature of race and facility where it took place). Furthermore, it does not set forth in what manner a volunteer driver is, and Florence county is not, "responsible" in connection with accidents. While the term "responsible" could be equated with liability of every kind which flows from an accident, it could also refer only to the obligation to report the accident to the proper authorities, and related tasks. Similarly, the term "accident" is undefined. Thus the question arises whether "accident" refers only to an incident that takes place while the vehicle is operated, or, for example, does it also include entering into or alighting from the vehicle while not being operated.
These concerns are not trivial. The ambiguities identified above will be construed against the county as drafter of the document. Rensink v. Wallenfang, 8 Wis.2d 206, 212,99 N.W.2d 196 (1959); 76 C.J.S. Release § 38 (1952). *Page 26 
Furthermore, an exculpatory contract with broad and general terms will bar only claims within the contemplation of the parties at the time of its execution. Arnold, 111 Wis.2d at 211;see also Brown v. Hammermill Paper Co., 88 Wis.2d 224, 234,276 N.W.2d 709 (1979) (whether releases which resulted in dismissal on the merits of"complaint and each and every cause of action" on behalf of plaintiffs applied to unnamed defendant held to be jury question); Pokorny v. Stastny, 51 Wis.2d 14,186 N.W.2d 284 (1971) (jury question as to whether action in contract fell within scope of agreement which released defendants from all claims "in tort or in equity"); Doyle v. Teasdale, 263 Wis. 328,57 N.W.2d 381 (1953) (language releasing tortfeasor from all claims for injuries "known and unknown" held ineffective to avoid setting aside release where injury not within contemplation of parties at time of execution). The intent of the parties is "critical" given the judicially expressed desire that "a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it." Brown, 88 Wis.2d at 237-38,quoting from Prosser, Torts § 49, at 304 (4th ed. 1971). Consequently, an exculpatory contract that fails to express the intent of the parties with particularity will not be enforced.Arnold, 111 Wis.2d at 211.
Given these infirmities, the county would be hard-pressed to assert that, by signing the document, clients and their family members knowingly and intentionally waived their rights to recover against the county for injuries suffered in connection with the volunteer driver program. Both the meaning and the scope of the quoted language is ambiguous. Moreover, the absence of particularity in the document concerning the intent on the county's part that the client waive liability to which the county is exposed under the Manor decision largely undercuts its effectiveness as a release of the liability (compare the language of the exculpatory contracts upheld as valid in *Page 27 Dobratz v. Thomson, 155 Wis.2d 307, 318-19, 455 N.W.2d 639
(Ct.App. 1990); Trainor v. Aztalan Cycle Club, Inc., 147 Wis.2d 107,110, 432 N.W.2d 626 (Ct. App 1988); Hammer v. Road America, Inc.,614 F. Supp. 467, 468 (E.D. Wis. 1985), aff'd, 793 F.2d 1296
(7th Cir. 1986)). In short, the document is little more than the registration form it proclaims itself to be.[1]
Apart from the foregoing, questions arise concerning whether the county could avoid liability in this manner, regardless of whether the driver or the client signs the document. The Wisconsin Supreme Court recognizes there are instances where public policy considerations override the validity of exculpatory contracts. See, e.g., Arnold, 111 Wis.2d at 210; Merten v.Nathan, 108 Wis.2d 205, 212-13, 321 N.W.2d 173 (1982); CollegeMobile Home Park Sales v. Hoffmann, 72 Wis.2d 514,241 N.W.2d 174 (1976). These situations may be summarized as follows:
 (1) A contract arises out of a business generally thought suitable for public regulation; (2) the party seeking exculpation is engaged in performing a service of great importance to the public; (3) the party seeking exculpation holds itself out as willing to give reasonable public service to all who apply; and (4) the party invoking exculpation possesses a decisive advantage of bargaining strength.
Discount Fabric House v. Wis. Tel. Co., 117 Wis.2d 587, 593,345 N.W.2d 417 (1984). Although Discount Fabric House involved the validity of an exculpatory contract by a business in the private sector, these public policy grounds for voiding such contracts apply equally well here. *Page 28 
First, the county must acknowledge that its MA program is highly regulated by both federal and state agencies. Next, it is equally apparent that the MA program in general, and the transportation service in particular, constitute important service to the public. Third, the county, through its Human Services Department, holds itself out as willing to furnish transportation to all eligible members of the public who apply. Indeed, by accepting federal and state funding, the county is obligated to furnish transportation to eligible members of the public. Finally, the county maintains superior bargaining strength over its clients. By virtue of their eligibility for the program, many clients have no alternative. Thus, they are confronted with the choice of either foregoing a medical or other necessary appointment or accepting transportation offered by the county only after waiving all rights of recovery against the county in the event they are injured. The decisive advantage to the county is clear.
Additionally, the Legislature may have implicitly rejected the availability of exculpatory contracts in this context. Section345.05(2) authorizes persons to file a claim against counties whenever they suffer damage caused by a negligently operated vehicle owned or operated by the county. The scope of this section would be sharply limited if counties could require medical assistance recipients to waive liability in exchange for transportation services. Moreover, the Legislature's response to the supreme court's decision in Manor did not include enacting language either restricting the scope of section 345.05 or authorizing exculpatory contracts. Rather, the only relevant post-Manor amendment was to place a ceiling, where none existed before, of $250,000.00 on the county's exposure in claims of this sort. 1987 Wisconsin Act 377, sec. 15. Thus, to sanction the county's use of an exculpatory contract would arguably defeat the legislative objective of ensuring a cause of action against the county. See Lemon, 111 Wis.2d at 570 *Page 29 
(legislative policy promotes safety on highway and protects victims from risks of government's use of highways).
In sum, the language of your enclosed document is inadequate to constitute an enforceable exculpatory contract. Moreover, even a properly drafted contract may run afoul of public policy considerations. While a definitive decision necessarily awaits litigation, it would be my suggestion that contact be made with the county's liability insurance carrier to discuss coverage options.[2]
JED:PLB
[1] The county should also be wary of being lulled into a false sense of security by merely confirming that a volunteer driver candidate has automobile insurance. Many such policies expressly exclude from coverage drivers who receive any form of compensation. Thus, if the county intends to rely upon insurance coverage in favor of the volunteer driver, it should take further steps to ensure coverage is in fact available.
[2] You should be aware that although the county may be unable to compel a waiver of its liability under section 345.05, Stats., that section does not require the county to provide primary insurance coverage. Rather, according to the court in Duncan v.Ehrhard, 158 Wis.2d 252, 461 N.W.2d 822 (Ct.App. 1990), where more than one policy is involved, the proper procedure is to construe the policy provisions to apportion responsibility. Id.
at 258. Thus, section 345.05 does not override contractual language in insurance policies. *Page 30