Patsy MONTOYA, Plaintiff–Appellee,

v.

TRINIDAD STATE NURSING HOME, Defendant–Appellant.

No. 04CA0824.

Colorado Court of Appeals, Div. II.

Feb. 10, 2005.

Phil C. Pearson, M.D., J.D., Rick A. Carmickle, Denver, Colorado, for Plaintiff-Appellee.

John W. Suthers, Attorney General, Patrick L. Sayas, Assistant Attorney General, Denver, Colorado, for Defendant-Appellant.

TAUBMAN, J.

Defendant, Trinidad State Nursing Home, appeals the trial court's order denying its motion seeking dismissal, on governmental immunity grounds, of the complaint brought by plaintiff, Patsy Montoya. We reverse and remand with directions.

Montoya brought this action as the result of the death of her husband, who was a patient at Trinidad's nursing home. Montoya alleged that her husband was given an overdose of narcotics and died as a result of that overdose. Montoya asserted a wrongful death claim against Trinidad based on professional negligence.

Trinidad moved to dismiss Montoya's complaint under C.R.C.P. 12(b)(1) on the basis that it was barred by the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2004. Trinidad argued that the operation of a nursing home did not constitute the operation of a public hospital for which a public entity's immunity is waived under § 24–10–106(1)(b), C.R.S.2004.

In response, Montoya noted that a division of this court in *Plummer v. Little,* 987 P.2d 871, 874 (Colo.App.1999), had construed the term "public hospital" to mean "an institution or place where sick or injured persons are given medical or surgical care." Thus, because a nursing home is an institution or place that provides for the treatment and care of sick persons, and Trinidad provided nursing care in a residential setting, Montoya argued that the nursing home operated by Trinidad constituted a "public hospital" under the plain meaning of that term.

The trial court denied Trinidad's motion, finding that the provision of skilled nursing care by Trinidad required the same standard of care as a general hospital. Accordingly, it concluded that Trinidad's immunity was waived by the GIA. Trinidad then brought this interlocutory appeal pursuant to § 24–10–108, C.R.S.2004.

Trinidad argues that the trial court erred in finding that the operation of a nursing home constituted the operation of a "public hospital" for purposes of the GIA. We agree.

The GIA provides that a public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort except for certain categories of actions for which immunity is specifically waived. Sections 24–10–105, 24–10–106(1), C.R.S.2004. As pertinent here, § 24–10–106(1)(b) waives a public entity's immunity in an action for injuries resulting from "the operation of any public hospital."

When we construe a statute, our fundamental responsibility is to give effect to the General Assembly's intent. *Springer v. City & County of Denver,* 13 P.3d 794 (Colo. 2000). We look to the statutory language, giving the words and phrases their plain and ordinary meaning. *Walton v. State,* 968 P.2d 636 (Colo.1998). Additionally, in applying the GIA, we strictly construe legislative grants of immunity and broadly construe legislative immunity waivers. *Univ. of Colo. v. Booth,* 78 P.3d 1098 (Colo.2003).

In *Plummer v. Little, supra,* a division of this court determined that a county clinic, which provided diagnostic services, evaluations, and other medical services to women on an outpatient basis, was not a "public hospital" for purposes of the GIA. The division noted that the clinic did not provide inpatient hospitalization services, that it was not licensed as a hospital, and that it was not affiliated with a licensed hospital. The division also noted that except for the provision of certain limited medical services, the clinic did not share many of the characteristics associated with a hospital.

The division also compared the common meaning of the term "clinic," which is "an institution connected with a hospital or medical school where diagnosis and treatment are

available to outpatients," with the common meaning of the term "hospital," which is "an institution or place where sick or injured persons are given medical or surgical care." *Plummer v. Little, supra,* 987 P.2d at 874 (quoting *Webster's Third New International Dictionary* 423, 1093 (1986)). The division then examined how the General Assembly used the term "hospital" in other statutes involving health care facilities. The division noted that when the General Assembly intended a statute to apply to facilities other than hospitals, it enumerated those facilities in the statute or used a categorical definition. Therefore, the division concluded that in the absence of an express legislative intent, it would not expand the waiver provision to include facilities other than those providing specific hospital services, generally inpatient care.

We note that in reaching its conclusion, the division in *Plummer* applied a prior standard for interpreting waiver provisions, which required that waiver provisions be narrowly interpreted, *see City & County of Denver v. Gallegos,* 916 P.2d 509, 511 (Colo.1996), rather than the current standard, which requires that waiver provisions be interpreted deferentially in favor of injured parties. *See Corsentino v. Cordova,* 4 P.3d 1082 (Colo.2000). Nevertheless, the decision in *Plummer* is based on an analysis of legislative intent. Thus, we conclude that its interpretation of the meaning of "public hospital" would still be valid under the *Corsentino* standard.

Trinidad argues that the General Assembly did not intend that the provision waiving immunity for public hospitals in the GIA include nursing homes. In particular, it asserts that when the General Assembly used the term "hospital" in health care legislation, it intended to include only hospitals and not other types of health care facilities. Trinidad also asserts that the regulations setting forth the health care licensing requirements define a hospital differently from a nursing home, that these regulations impose different obligations on hospitals and nursing homes, and that there are specific differences between the types of treatments and services provided by a hospital and a nursing home. We agree with Trinidad.

Here, an affidavit provided by the administrator of the nursing home stated that the nursing home provides long-term skilled nursing care to elderly residents. Such care involves providing room, board, support services, and nursing care. No physician is a member of the staff. However, the staff provides care that is required and ordered by the resident's private care physician. This care includes recuperative care from surgery, heart attack, illness, and fractures. Additionally, the staff administers medication and intravenous fluids, performs catheterizations, changes dressings, applies ointments, and monitors vital signs. However, the staff does not provide acute care, including surgery, blood transfusions, x-rays, cardiac monitoring, or respiratory therapy. If a patient requires such services, the patient is transported to the appropriate hospital to receive the needed care. The nursing home is not licensed as a hospital, and no surgical services or other services are offered that are commonly associated with a licensed hospital.

Pursuant to § 26–12–201, C.R.S.2004, the General Assembly authorized the creation of the Trinidad State Nursing Home and provided that the management, control, and supervision of Trinidad and other state nursing homes are subject to legislative oversight. *See* § 26–12–101, et seq., C.R.S.2004. In particular, the General Assembly authorized the State Board of Human Services to adopt rules to effectuate that purpose. *See* § 26–12–113, C.R.S.2004. Pursuant to such authority, the State Board of Human Services has implemented regulations governing the operation of nursing homes and has defined a "long-term care facility" as:

[A] health facility that holds itself out as a nursing home, nursing facility, nursing care facility or intermediate care facility or a health facility that is planned, organized, operated, and maintained to provide supportive, restorative, and preventive services to persons who, due to physical and/or mental disability require continuous or regular inpatient care.

*See* Dep't of Public Health & Environment Ch. V (definition), 6 Code Colo. Regs. 1011–1; *see also Webster's, supra,* 1552 (defining nursing home as "a private home or other

place where maintenance and personal or nursing care are provided for three or more persons who are unable to care for themselves properly").

In contrast, hospitals are governed by separate statutory and regulatory schemes. *See* § 25–3–101, et seq., C.R.S.2004; Dep't of Public Health & Environment Ch. IV. A "general hospital" is defined in the regulations as:

> A health facility that, under an organized medical staff, offers and provides twenty-four hours per day, seven days per week, inpatient services, emergency medical and surgical care, continuous nursing services, and necessary ancillary services, to individuals for the diagnosis or treatment of injury, illness, pregnancy, or disability.

Dep't of Public Health & Environment Ch. IV, Reg. No. 1.01.

As the statutory and regulatory provisions make apparent, both the General Assembly and the regulatory agencies have treated hospitals and nursing homes differently. For instance, the regulations governing hospitals provide that a hospital is required to have physicians on staff. *See* Dep't of Public Health & Environment Ch. IV, Reg. Nos. 1.2, 3.2. Trinidad has no doctor on staff. In addition, a hospital is required to provide diagnostic, anesthesia, laboratory, emergency, and radiological services. *See* Dep't of Public Health & Environment Ch. IV, Reg. Nos. 1.02, 7.1, 8.1.1, 11.1, 24.1. Trinidad does not provide such services. Further, although whether a facility is licensed as a hospital is not dispositive of whether it is a public hospital for purposes of the GIA, "it is an important factor for consideration." *Plummer, supra,* 987 P.2d at 875. Again, Trinidad is not licensed as a hospital.

We also note that the plain meaning of the term "hospital," which is defined as "an institution or place where sick or injured persons are given medical or surgical care," *see Plummer, supra,* 987 P.2d at 874, supports the conclusion that Trinidad is not a public hospital. The term "medical" is commonly defined as "of, relating to, or concerned with physicians or with the practice of medicine often as distinguished from surgery." *Webster's, supra,* 1402. The plain meaning of

"surgical" is "of, relating to, or concerned with surgeons or surgery." *Webster's, supra,* 2301. Both definitions concern the provision of services by a doctor, and, as noted, Trinidad does not have a doctor on staff.

Finally, as the division in *Plummer, supra,* 987 P.2d at 875, noted: "[T]he General Assembly's use of the term 'hospital' without enumeration of other types of facilities, as it has done in other statutes involving health care, suggests that it intended the waiver of immunity for the 'operation of a public hospital' to be limited." *See also Daley v. Univ. of Colo. Health Sci. Ctr.,* —— P.3d ——, 2005 WL 170740 (Colo.App. No. 04CA0078, Jan. 27, 2005) (provision of risk analysis, claims review, and litigation services by private contract to a public hospital does not constitute the operation of a public hospital for purposes of the GIA).

Therefore, based on the foregoing and consistent with the analysis in *Plummer,* we conclude that a nursing home does not constitute a hospital for purposes of the GIA. Accordingly, we conclude that the trial court erred in determining that Trinidad's immunity had been waived under the GIA.

The order is reversed, and the case is remanded to the trial court to dismiss Montoya's claims against Trinidad.

Judge ROTHENBERG and Judge RUSSEL concur.