**Terry D. CEJA, Plaintiff–Appellant and Cross–Appellee,**

v.

**Robert B. LEMIRE, Defendant–Appellee and Cross–Appellant,**

**and**

**The Board of County Commissioners of Arapahoe County, Defendant– Appellee.**

No. 05CA0335.

Colorado Court of Appeals, Div. IV.

May 4, 2006.

Certiorari Granted in part Oct. 2, 2006.

**CASEBOLT, J.**

This action arises out of an automobile accident caused by a county employee using his personal vehicle while acting in the course and scope of his employment. Plaintiff, Terry D. Ceja, appeals the order determining that defendant, the Board of County Commissioners of Arapahoe County (County), is immune from liability under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2005. Defendant Robert B. Lemire, the county employee, cross-appeals the determination that he is not entitled to immunity. We affirm in part, reverse in part, and remand with directions.

Ceja was operating a motorcycle when he was involved in an accident with Lemire, who was driving his personal automobile on County business. It is undisputed that at the time of the accident, Lemire was being reimbursed by the County for the use of his personal automobile at a set rate per mile.

Ceja asserted a negligence claim against Lemire and against the County based on respondeat superior. Asserting governmental immunity under the GIA, the County filed a motion to dismiss. It argued that its immunity was not waived under § 24–10–106(1)(a), C.R.S.2005, which waives a public entity's immunity for the operation of a motor vehicle "owned or leased by the public entity," because Lemire was using his own vehicle at the time of the accident. The County also argued that its payment of mileage reimbursement to Lemire did not constitute a lease of Lemire's vehicle for purposes of the GIA. Lemire joined the County's motion, asserting that he was entitled to immunity on the same basis.

In response, Ceja asserted that by reimbursing its employees for the use of their private vehicles, the County effectively leased those vehicles, resulting in a waiver of immunity under § 24–10–106(1)(a). Ceja also argued that, in any event, a public employee does not have immunity under the GIA while using his or her personal vehicle.

The trial court determined that the County was immune under the GIA because the payment of mileage reimbursement did not constitute a lease of Lemire's vehicle. Accordingly, it granted the County's motion to dismiss. However, it held that Lemire was not entitled to immunity under § 24–10–106(1)(a) and denied his motion to dismiss. This appeal followed.

## I. County's Immunity

■ Ceja contends the trial court erred in dismissing his claim against the County. We disagree.

The GIA establishes immunity from tort actions filed against public entities or their employees and then provides exceptions and waivers under which injured plaintiffs may maintain certain actions. *See Finnie v. Jefferson County Sch. Dist. R–1*, 79 P.3d 1253 (Colo.2003).

■ Whether governmental immunity applies to bar a claim presents a question of subject matter jurisdiction that, if raised before trial, is properly addressed by the trial

court pursuant to a C.R.C.P. 12(b)(1) motion to dismiss. *Tidwell v. City & County of Denver,* 83 P.3d 75 (Colo.2003).

■ If the jurisdictional issue involves a factual dispute, a reviewing court employs a clear error standard of review. However, when, as here, the facts are undisputed and the issue is one of law, we review de novo. *Springer v. City & County of Denver,* 13 P.3d 794 (Colo.2000).

■ Because governmental immunity under the GIA derogates Colorado's common law, we strictly construe the statute's immunity provisions. *Corsentino v. Cordova,* 4 P.3d 1082 (Colo.2000). We construe the provisions that waive immunity broadly in the interest of compensating victims of governmental negligence. *Springer v. City & County of Denver, supra; Walton v. State,* 968 P.2d 636 (Colo.1998).

In interpreting the GIA, our primary purpose is to ascertain and give effect to the intent of the General Assembly. *Springer v. City & County of Denver, supra.* Thus, we look first to the language of the statute itself and give the words and phrases their plain and ordinary meaning. *Tidwell v. City & County of Denver, supra.* We should avoid a strained or forced construction of a statutory term and look to the context in which the term is used. *See Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995).

As pertinent here, § 24–10–106(1)(a) provides that "[s]overeign immunity is waived by a public entity in an action for injuries resulting from ... [t]he operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment."

The term "lease" is not defined in the GIA. It is commonly defined as "a contract by which one conveys lands, tenements, or hereditaments for life, for a term of years, or at will or for any less interest than that of the lessor." *Webster's Third New International Dictionary* 1286 (1986); *see also Black's Law Dictionary* 907 (8th ed.2004)(defining "lease" as a "contract by which the rightful possessor of personal property conveys the right to use that property in exchange for consideration"); *cf.* § 4–2.5–103(1)(j), C.R.S.2005

(Uniform Commercial Code defines the term "lease" as "a transfer of the right to possession and use of goods for a term in return for consideration").

Hence, the common meaning of the term "lease" contemplates the transfer or conveyance of an interest in, and the right to possession, control, and use of, the property subject to the lease. *See Schneiker v. Gordon,* 732 P.2d 603 (Colo.1987)(a modern lease is a conveyance of an interest in the property as well as a contract); *Sundheim v. Bd. of County Comm'rs,* 904 P.2d 1337 (Colo.App.1995)(absent some agreement to the contrary, a tenant is entitled to the possession of the leased premises to the exclusion of the landlord), *aff'd,* 926 P.2d 545 (Colo.1996); *Am. Coin–Meter, Inc. v. Poole,* 31 Colo.App. 316, 503 P.2d 626 (1972)(a lease gives the right of possession of the property leased and exclusive use or occupation of it for all purposes not prohibited by its terms).

A "lease" also contemplates that the transfer will be effective for a particular term. *See Van Dorn Retail Mgmt., Inc. v. City & County of Denver,* 902 P.2d 383 (Colo.App. 1994)(a lease normally provides that the lessor retains title to the property and reacquires possession of the property at the end of the lease term). Consequently, the lessee generally acquires a property right together with the right to use or control the property for the duration of the lease.

Here, the record does not demonstrate that the County acquired possession, control, or the right to use Lemire's car. He certainly did not transfer any possession or control, as nothing in the record indicates that the County could allow others besides Lemire to use that vehicle. The County merely agreed that Lemire would use his own car when he was transacting the County's business. But even that agreement simply reflects a policy that the County would reimburse employees at a fixed rate per mile for the employees' use of their personal vehicles in connection with their employment.

As well, there is no indication that Lemire in any sense conveyed or transferred any property interest in the vehicle to the County. The travel-meal-mileage reimbursement

policy authored by the County merely states: "Transportation expenses incurred as a result of official business will be reimbursed by the County. Mileage will only be paid from the employee's assigned work site to destination and return to assigned work site when a private vehicle is used."

Nor is there any indication that Lemire and the County agreed to a particular term that would apply to this arrangement. Nothing in the record indicates that the County agreed to pay Lemire for *all* mileage expenses he might incur. Rather, Lemire received reimbursement only when he used the vehicle on County business. Thus, he could not collect reimbursement for driving his car to work or back home, nor when going to lunch or running personal errands during the day. In our view, it would be anomalous to conclude that a "lease" of a vehicle could be effective only during certain parts of the business day and not during others.

We also note that our interpretation accords with an opinion letter in which the attorney general concluded that the state would not be liable for injuries sustained resulting from an automobile accident in which a state employee was driving a privately owned vehicle during the course of his employment for which reimbursement was made because the vehicle was not leased within the meaning of the GIA. Attorney General Opinion AG Alpha No. 82 LO AD AGAGM (Sept. 13, 1982); *see Leddy v. Cornell*, 52 Colo. 189, 120 P. 153 (1912)(attorney general opinion, although not conclusive or binding, may be persuasive). In *Bertolotti v. Macomb County*, 20 Mich.App. 162, 173 N.W.2d 723 (1969), upon which the opinion letter relies, the court held that a county did not have control or use of a car driven and owned by an employee merely because the county compensated the employee for the use of the vehicle.

Ceja nevertheless argues that a different result is warranted. He relies upon *Manor v. Hanson*, 123 Wis.2d 524, 368 N.W.2d 41 (1985). There, a county agreed to pay mileage reimbursement to volunteers who transported elderly and handicapped persons in the volunteers' personal vehicles. The applicable Wisconsin statute, Wis. Stat. 345.05(2), waived monetary liability limits for governmental entities in cases resulting from "the negligent operation of a motor vehicle owned and operated by" a public entity. *Manor v. Hanson, supra*, 123 Wis.2d at 532, 368 N.W.2d at 45. Under this statute, a vehicle was deemed to be owned or operated by the entity if it was either rented or leased by the entity.

Relying on the common meaning of the term "rent," which included "consideration paid for use or occupation of property," the Wisconsin Supreme Court concluded that mileage reimbursement to volunteers was compensation for the use of the vehicle and therefore constituted the "renting" of those vehicles for purposes of that statute. *Manor v. Hanson, supra*, 123 Wis.2d at 532, 368 N.W.2d at 45.

We find it significant that the *Manor* court did not hold that the mere payment of mileage reimbursement constituted a lease. Instead, it held that the circumstances there constituted a "use" by the county and the payment to the owner constituted "rent" for the use of the vehicle. The court did not discuss the meaning of "leased," which, as we have noted, generally means the transfer of an interest in property along with possession, control, and the right to use. Instead, the result was predicated upon the meaning of "rent," and the dictionary definition that the court relied upon there is different from our construction of the term "lease." Thus, *Manor* is distinguishable.

In addition, the County points to numerous cases holding that, in the context of insurance policy interpretation, an employer's payment of mileage reimbursement does not constitute a lease of the employee's vehicle. *See, e.g., Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687 (Ala.2001)(employee's use of her own vehicle to perform her duties and receipt of mileage reimbursement paid by her employer did not make the employee's car a hired automobile within the meaning of the employer's automobile policy); *Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 663 P.2d 953 (Alaska 1983)(mileage reimbursement paid by school district to registered owner of van, who was school district employee, constituted an "operating allow-

ance" and did not result in a van being a "hired automobile" under the school district's liability policy); *Dupre v. Maynard*, 692 So.2d 36 (La.Ct.App.1997)(employer's payment of mileage reimbursement for employee's use of her personal vehicle in course of her employment did not constitute lease or rent of vehicle, so as to fall within definition of "covered auto" under policy, but constituted mere reimbursement of expenses); *Griffin v. Travelers Indem. Co.*, 4 S.W.3d 915 (Tex.App.1999)(employer's reimbursement of mileage expenses for employee's use of personal vehicle did not create a lease of employee's car and, therefore, it was not a "covered auto" under insurance policy).

While we acknowledge that these cases did not deal with governmental immunity, we are nonetheless persuaded by their reasoning that, absent the right to possession, control, and use of the employee's vehicle, the payment of mileage reimbursement does not create a lease of the vehicle. *See, e.g., Griffin v. Travelers Indem. Co., supra.*

We also acknowledge that our interpretation will have an anomalous result: a party injured in an auto accident by a governmental employee's negligence occurring in the course and scope of the employment will not be barred from recovery under the GIA if the vehicle is owned or leased by the governmental entity, but will be precluded from recovery if the employee is using his or her own vehicle. However, our interpretation is based on the plain language of a statute that has not been changed even though other divisions of this court have alluded to this perceived anomaly. *See Grabler v. Allen*, 109 P.3d 1047 (Colo.App.2005)(division found that public employee's and public entity's immunity was waived under § 24–10–106(1)(a) when a trailer, which was owned by the public entity, was attached to a truck that was owned by a private entity; consequently, division was not required to address whether there was immunity under the GIA for a privately owned vehicle); *Shandy v. Lunceford*, 886 P.2d 319 (Colo.App.1994)(division noted that the plain language of § 24–10–118(2)(a), C.R.S.2005, indicated that a public employee driving her own motor vehicle in the course of her employment was

entitled to claim sovereign immunity; however, the plaintiffs argued that the employee was not acting in the course and scope of her employment when the accident occurred); *Mentzel v. Judicial Dep't*, 778 P.2d 323 (Colo.App.1989)(division held that because vehicle involved in accident was not owned or leased by the public entity, the trial court did not err in suspending discovery regarding the vehicle driven by the public employee; however, the plaintiff did not assert a waiver of immunity under § 24–10–106(1)(a)). Despite these cases, the General Assembly has not chosen to amend this provision of the GIA.

In addition, we note that the General Assembly expressly has acknowledged that while the legislative purpose of governmental immunity is to protect the government from unlimited liability, it can act as an "inequitable doctrine" with harsh consequences for plaintiffs. *See* § 24–10–102, C.R.S.2005; *Finnie v. Jefferson County Sch. Dist. R–1, supra; see also Montoya v. Trinidad State Nursing Home*, 109 P.3d 1051 (Colo.App. 2005)(state nursing home had immunity in action seeking compensation for death of resident); *Plummer v. Little*, 987 P.2d 871 (Colo.App.1999)(physician had immunity for his alleged failure timely to diagnose breast cancer at county operated clinic because clinic at which he provided treatment was not a "public hospital" for which immunity was waived under the GIA).

We also note that Ceja does not contend that the statute violates any constitutional right. Thus, any modification to the statutory language must be accomplished by legislative action, not judicial interpretation. *See Martin v. Montezuma–Cortez Sch. Dist. RE–1*, 841 P.2d 237 (Colo.1992)(absent constitutional infirmity, it is not within the judicial power to exclude from a statute that which the legislature expressly includes).

Contrary to Ceja's contention, while this result is harsh, it is not absurd. The General Assembly could well have decided that limitations on waivers only as to certain circumstances are advisable so as to allow governmental entities to control their liability risks. *See* § 24–10–102, C.R.S.2005 (limitations on

liability are necessary to protect taxpayers against excessive fiscal burdens).

Because the County's payment of mileage reimbursement to Lemire did not create a lease of his vehicle for purposes of the GIA, the trial court correctly determined that the GIA barred Ceja's claim against the County.

## II. Lemire's Immunity

■ Lemire argues on cross-appeal that the trial court erred in concluding that the GIA did not provide immunity to him under these circumstances. We agree.

Section 24–10–118(2)(a), C.R.S.2005, provides:

A public employee shall be immune from liability in any claim for injury, whether brought pursuant to this article, section 29–5–111, C.R.S., the common law, or otherwise, which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton; except that no such immunity may be asserted in an action for injuries resulting from the circumstances specified in section 24–10–106(1).

Section 24–10–106(1) sets forth six circumstances in which immunity may be waived. As noted previously, § 24–10–106(1)(a) provides that "sovereign immunity is waived by a public entity in an action for injuries resulting from ... the operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment."

Ceja argues that the language in § 24–10–118(2)(a) that waives immunity under "the circumstances specified in section 24–10–106(1)" refers only to the act of operating a motor vehicle, not to the ownership status of the vehicle. However, that construction of § 24–10–118(2)(a) reads out the language in § 24–10–106(1)(a) that the motor vehicle must be "owned or leased" by the public entity. Although we must construe the immunity provisions narrowly and construe the

provisions that waive immunity broadly, these principles cannot be used to defeat the plain language of a statute. *Martin v. Montezuma–Cortez Sch. Dist. RE–1, supra* (court cannot read out of existence an express definition under the guise of narrow construction).

Ceja also argues that the intent of the legislature prevails over a literal interpretation of a statute that leads to an absurd result. We agree that is the general rule. *See AviComm, Inc. v. Colo. Pub. Utils. Comm'n,* 955 P.2d 1023 (Colo.1998). However, the legislative intent Ceja advocates does not flow from the statutory language unless we ignore the language of the statute, and the result, while harsh, is not absurd.

We also note that § 24–10–118(2)(a) was apparently enacted in response to the decision in *Kristensen v. Jones,* 195 Colo. 122, 575 P.2d 854 (1978). There, the supreme court stated:

Public employees generally have been personally liable for injuries caused by their negligent actions within the scope of employment even when the defense of sovereign immunity was available to their employers. Negligent operators of public vehicles have been included in this rule. An injured person's right to sue the negligent employee of an immune public entity derives from the common law, and we will not lightly infer a legislative abrogation of that right absent a clear expression of intent. No such intent is either expressed or implied in the [GIA].

*Kristensen v. Jones, supra,* 195 Colo. at 124, 575 P.2d at 855 (citations omitted).

Here, the intent to grant immunity to negligent employees of immune governmental entities is definitively expressed in § 24–10–118.

As stated above, we agree that this interpretation has harsh consequences and to some extent will lead to anomalous or inconsistent results; however, as noted previously, this interpretation is based on the plain language of the statute.

For these reasons, we conclude that the trial court erred in determining that Le-

mire's immunity was waived under § 24–10–106(1)(a) for the operation of a motor vehicle.

### III. Attorney Fees

The County has requested an award of its costs and attorney fees pursuant to § 13–17–201, C.R.S.2005. We agree that an award is required. *See Smith v. Town of Snowmass Village,* 919 P.2d 868 (Colo.App.1996)(award of attorney fees is mandatory when a court dismisses an action under the GIA for lack of subject matter jurisdiction).

That part of the order dismissing Ceja's claim against the County is affirmed. That part of the order denying immunity to Lemire is reversed, and the case is remanded to the trial court with directions to dismiss Ceja's claims against Lemire and to determine and award reasonable attorney fees and costs to the County.

Judge VOGT and Judge FURMAN concur.